# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

FIREARMS REGULATORY ACCOUNTABILITY COALITION, INC.,
STATES OF WEST VIRGINIA, NORTH DAKOTA, *et al.*,

*Plaintiffs-Appellants,*

v.

MERRICK B. GARLAND, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of North Dakota
The Honorable District Court Judge Daniel L. Hovland
Case No. 1:23-cv-0024-DLH-CRH

## EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

PATRICK MORRISEY
Attorney General
LINDSAY SEE
Solicitor General
MICHAEL R. WILLIAMS
Principal Deputy Solicitor General
Office of the West Virginia Attorney
General
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
(681) 313-4550
Lindsay.S.See@wvago.gov
Michael.R.Williams@wvago.gov

Stephen J. Obermeier
Thomas M. Johnson, Jr.
Michael D. Faucette
Jeremy J. Broggi
Boyd Garriott
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Tel: 202.719.7000
Fax: 202.719.7049
SObermeier@wiley.law
*Additional Counsel Listed On
Signature Page*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

STATEMENT ......................................................................................2

      A.   The Federal Statutes.................................................................2

      B.   ATF's Prior Practice. ...............................................................3

      C.   ATF Reverses Course. ..............................................................4

PROCEDURAL HISTORY ....................................................................5

ARGUMENT ......................................................................................5

   I.   Appellants Will Succeed On The Merits. ...........................................5

      A.   The Rule Exceeds ATF's Statutory Authority...........................5

      B.   The Rule Is Arbitrary And Capricious.....................................13

      C.   The Unlawful Adjudications Confirm The Rule Is Arbitrary. .19

   II.   Appellants Face Irreparable Harm Without An Injunction.................20

   III.   The Balance Of Harms And Public Interest Favor An Injunction......22

CONCLUSION ...................................................................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

Appellate Case: 23-3230   Page: 2   Date Filed: 10/10/2023 Entry ID: 5324655

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
    458 U.S. 592 (1982)..........................................................................................22

*Alliance for Hippocratic Medicine v. FDA*,
    78 F.4th 210 (5th Cir. 2023) ..........................................................................21

*ANR Storage Co. v. FERC*,
    904 F.3d 1020 (D.C. Cir. 2018).......................................................................18

*Baker Electric Cooperative, Inc. v. Chaske*,
    28 F.3d 1466 (8th Cir. 1994) ..........................................................................21

*Bennett v. Spear*,
    520 U.S. 154 (1997)..........................................................................................20

*Cargill v. Garland*,
    57 F.4th 447 (5th Cir. 2023) ...........................................................................12

*Citizens Telecommunications Company of Minnesota, LLC v. FCC*,
    901 F.3d 991 (8th Cir. 2018) ..........................................................................18

*DHS v. Regents of the University of California*,
    140 S. Ct. 1891 (2020)...............................................................................18, 19

*Guedes v. ATF*,
    140 S. Ct. 789 (2020).......................................................................................12

*Hardin v. ATF*,
    65 F.4th 895 (6th Cir. 2023) ...........................................................................12

*Henson v. Santander Consumer USA Inc.*,
    582 U.S. 79 (2017)..............................................................................................7

*Innovator Enterprises, Inc. v. Jones*,
    28 F. Supp. 3d 14 (D.D.C. 2014)...............................................................14, 17

Appellate Case: 23-3230    Page: 3    Date Filed: 10/10/2023 Entry ID: 5324655

*International Association of Sheet Metal, Air, Rail and Transportation Workers v. Iowa Northern Railway Co.*,
 37 F.4th 1399 (8th Cir. 2022) ...................................................................7

*Iowa Utilities Bd. v. FCC*,
 109 F.3d 418 (8th Cir. 1996) ...................................................................21

*Kearney Regional Medical Center, LLC v. HHS*,
 934 F.3d 812 (8th Cir. 2019) ...................................................13, 15, 20

*Kroupa v. Nielsen*,
 731 F.3d 813 (8th Cir. 2013) ...................................................................21

*League of Women Voters of United States v. Newby*,
 838 F.3d 1 (D.C. Cir. 2016) ......................................................................22

*LeMoyne-Owen College v. NLRB*,
 357 F.3d 55 (D.C. Cir. 2004) ...................................................................13

*Lomont v. O'Neill*,
 285 F.3d 9 (D.C. Cir. 2002) ......................................................................6

*Louisiana v. Biden*,
 55 F.4th 1017 (5th Cir. 2022) .................................................................21

*Michigan v. EPA*,
 576 U.S. 743 (2015).....................................................................................18

*Mock v. Garland*,
 2023 WL 6457920 (N.D. Tex. Oct. 2, 2023)............................2, 20, 23

*Mock v. Garland*,
 75 F.4th 563 (5th Cir. 2023) ........................................................*passim*

*Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*,
 463 U.S. 29 (1983).........................................................................14, 16

*Nebraska v. Biden*,
 52 F.4th 1044 (8th Cir. 2022) .........................................................5, 23

iv

*Nken v. Holder,*
    556 U.S. 418 (2009)..................................................................22

*Owner-Operator Independent Drivers Association v. FMCSA,*
    494 F.3d 188 (D.C. Cir. 2007)...................................................18

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
    566 U.S. 639 (2012)....................................................................7

*Record Head Corp. v. Sachen,*
    682 F.2d 672 (7th Cir. 1982) ....................................................10

*Restaurant Law Center v. United States Department of Labor,*
    66 F.4th 593 (5th Cir. 2023) ....................................................22

*Sekhar v. United States,*
    570 U.S. 729 (2013)..................................................................11

*Sierra Club v. U.S. Army Corps of Engineers,*
    645 F.3d 978 (8th Cir. 2011) ....................................................22

*Spirit Airlines, Inc. v. FAA,*
    997 F.3d 1247 (D.C. Cir. 2021).................................................16

*Texas Gun Rights v. ATF,*
    No. 4:23-cv-00578 (N.D. Tex. Oct. 4, 2023) ...........................19

*Tripoli Rocketry Association, Inc. v. ATF,*
    437 F.3d 75 (D.C. Cir. 2006).....................................................16

*United States v. Biro,*
    143 F.3d 1421 (11th Cir. 1998) ................................................10

*United States v. Buford,*
    54 F.4th 1066 (8th Cir. 2022) ..................................................10

*United States v. Cox,*
    906 F.3d 1170 (10th Cir. 2018) ..................................................8

*United States v. Miller,*
    307 U.S. 174 (1939)....................................................................6

v

*United States v. Thompson/Center Arms Co.*,
  504 U.S. 505 (1992) ................................................................5, 9, 10

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982) ................................................................9

*Ysleta Del Sur Pueblo v. Texas*,
  142 S. Ct. 1929 (2022) ................................................................7

**Statutes**

5 U.S.C. § 702 ................................................................21

18 U.S.C. § 921 ................................................................8

18 U.S.C. § 922 ................................................................2

18 U.S.C. § 924 ................................................................3, 10

18 U.S.C. § 926 ................................................................18

26 U.S.C. § 5812 ................................................................2

26 U.S.C. § 5822 ................................................................2

26 U.S.C. § 5841 ................................................................2

26 U.S.C. § 5845 ................................................................2, 6, 7, 8

26 U.S.C. § 5871 ................................................................3, 10

26 U.S.C. § 7805 ................................................................18

Fed. R. App. P. 8 ................................................................5

**Regulatory Materials**

Factoring Criteria for Firearms with Attached "Stabilizing Braces," 88
  Fed. Reg. 6,478 (Jan. 31, 2023) ................................................................*passim*

Factoring Criteria for Firearms with Attached "Stabilizing Braces," 86
  Fed. Reg. 30,826 (June 10, 2021). ................................................................11

Appellate Case: 23-3230     Page: 6     Date Filed: 10/10/2023 Entry ID: 5324655

## Other Authorities

David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective*, 17 Cumb. L. Rev. 585 (1986) ..........................................6

Remarks on Gun Violence Prevention Efforts, 2021 Daily Comp. Pres. Doc. 298 (Apr. 8, 2021). ..............................................................................1

U.S. Patent No. 8,869,444 B2 (issued Oct. 28, 2014) ................................................3

Appellate Case: 23-3230     Page: 7     Date Filed: 10/10/2023 Entry ID: 5324655

# INTRODUCTION

For more than a decade, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") authorized the public to use pistol stabilizing braces, a popular firearms accessory, without federal regulation. During that time, ATF repeatedly issued letter rulings assuring the public that a brace does not alter a gun's classification as a pistol. As a result, millions of Americans for years lawfully purchased stabilizing braces, and pistols equipped with stabilizing braces, from authorized manufacturers with ATF's full knowledge and express approval.

Then everything changed. Frustrated with congressional inaction, the President ordered ATF to abandon a decade of practice and "treat pistols modified with stabilizing braces" as "subject to the National Firearms Act." Remarks on Gun Violence Prevention Efforts, 2021 Daily Comp. Pres. Doc. 298, at 3 (Apr. 8, 2021). ATF complied by issuing the Rule at issue here, which purports to provide "factoring criteria" to "clarify" how ATF will determine whether a gun is subject to enhanced regulation. Factoring Criteria for Firearms with Attached "Stabilizing Braces," 88 Fed. Reg. 6,478 (Jan. 31, 2023).

In actuality, the Rule ensures the agency will reach a predetermined result. According to ATF's own estimates, the Rule will cover 99% of braced pistols, eliminate 750,000 firearms, cost private parties $5 billion, and shutter four-of-five brace manufacturers. R.Doc. 1-5 at 21, 56, 62-67, 76-77. That includes commercial

1

Appellants in this case who waited seven months for the district court to rule on their motion for preliminary relief, while watching their sales evaporate, laying off employees, and attempting to stave off financial ruin. They also apply to the individuals and twenty-five States represented here—who have had to choose between complying with the unlawful Rule or risking federal criminal prosecution.

That these drastic consequences are not the result of any legislative change should give the Court serious pause. Already, the Fifth Circuit has held that the same Rule at issue here "violates the [Administrative Procedure Act]." *Mock v. Garland*, 75 F.4th 563, 578 (5th Cir. 2023). The Fifth Circuit identified numerous "serious infirmities" in the Rule, including that it makes it "nigh impossible for a regular citizen to determine" whether "his firearm is subject to criminal penalties without registration." *Id.* at 584-85. But though that Court held the Rule unlawful, the resulting preliminary injunction covers only the parties there. *Mock v. Garland*, 2023 WL 6457920, at *17-18 (N.D. Tex. Oct. 2, 2023). Appellants thus remain in need of emergency relief.

## STATEMENT

### A. The Federal Statutes.

The National Firearms Act ("NFA") and Gun Control Act ("GCA") heavily regulate short-barreled rifles. These include registration requirements and limits on transportation, sale, and delivery. *See* 26 U.S.C. §§ 5812, 5822, 5841, 5845; 18

2

U.S.C. § 922(a)(4), (b)(4).  Noncompliance is a criminal offense.  *See* 26 U.S.C. § 5871; 18 U.S.C. §§ 924(a)(1).

## B.    ATF's Prior Practice.

In 2012, Appellant SB Tactical developed the original Pistol Stabilizing Brace® to promote shooting inclusion for service-disabled military veterans.  A brace is a rubber cuff with a Velcro strap that attaches to the back of a pistol and "provide[s] the shooter with additional support."  88 Fed. Reg. at 6,479, 6,482-83; *see* U.S. Patent No. 8,869,444 B2 (issued Oct. 28, 2014).  Before selling the device, SB Tactical procured a classification letter from ATF holding that the brace "would not alter the classification of a pistol or other firearm" and that "such a firearm *would not* be subject to NFA controls."  88 Fed. Reg. at 6,479 (quoting Letter from ATF #2013-0172 (Nov. 26, 2012) (emphasis in original letter).  ATF recognized that a stabilizing brace differs from a shoulder stock because a "'brace,' when attached to a firearm, d[oes] 'not convert that weapon to be fired from the shoulder.'"  *Ibid.*

ATF subsequently issued more than a dozen adjudications holding that a stabilizing brace does not transform a pistol into a short-barreled rifle.  *Id.* at 6,502 n.84.  The Department took the same position in federal criminal prosecutions, assuring courts this interpretation was correct.  R.Doc. 1-19 at 38:9-15.  And ATF told the public "stabilizing braces are perfectly legal accessories for large handguns or pistols."  R.Doc. 1-20 at 1.  ATF thus created "a thriving market" for stabilizing

Appellate Case: 23-3230     Page: 10     Date Filed: 10/10/2023 Entry ID: 5324655

braces.  R.Doc. 1-21 at 2.  Companies sold *millions* of braces to law-abiding citizens with ATF's full knowledge and assent.  88 Fed. Reg. at 6,560.

### C.    ATF Reverses Course.

ATF then released the Rule at issue here, along with 60 contemporaneous adjudications.  These, the Fifth Circuit recognized, effected "a rug-pull on the public." *Mock*, 75 F.4th at 584.

The Rule nominally imposes a test that assesses a braced pistol's "rear surface area" and six other factors: (i) whether a braced pistol's "weight or length" is "consistent with ... similarly designed rifles," (ii) whether its "length of pull" is "consistent with ... similarly designed rifles," (iii) whether it has "sights or scopes," (iv) whether the attachment is "necessary for the cycle of operations," (v) "indirect and direct marketing and promotional materials," and (vi) information in "the general community." 88 Fed. Reg. at 6,574-75.  In reality, "the six-part test provides no meaningful clarity about what constitutes an impermissible stabilizing brace." *Mock*, 75 F.4th at 585.

ATF says its new Rule will treat *99%* of braced pistols as short-barreled rifles. R.Doc. 1-5 at 21.  In the adjudications—which are wholly unexplained—it was 100%.  R. Docs. 1-6, 1-7.  ATF offers "no examples of any designs" that would satisfy the Rule.  *Mock*, 75 F.4th at 585.

4

## PROCEDURAL HISTORY

ATF issued the Rule and adjudications January 31, 2023. Appellants sued February 9 and sought a preliminary injunction February 10. The district court denied relief September 12 but did not meaningfully engage Appellants' arguments. Meanwhile, the Fifth Circuit held the Rule unlawful. After the district court on remand from the Fifth Circuit limited relief to the parties before it, Appellants timely appealed this case and moved the court below for an injunction pending appeal. The motion below remains pending, and the district court has thus "failed to afford the relief requested." *See* Fed. R. App. Proc. 8(a)(2)(A)(ii).

## ARGUMENT

Appellants seeking an injunction pending appeal under Rule 8 must show (1) likelihood of success on the merits, (2) irreparable harm, (3) that the equities favor an injunction, and (4) that an injunction is in the public interest. *See, e.g.*, *Nebraska v. Biden*, 52 F.4th 1044, 1046 (8th Cir. 2022).

## I.    APPELLANTS WILL SUCCEED ON THE MERITS.

### A.    The Rule Exceeds ATF's Statutory Authority.

#### 1.    <u>Braced Pistols Are Not "Firearms" Or "Short-Barreled Rifles."</u>

The NFA and GCA regulate "weapons likely to be used for criminal purposes." *United States v. Thompson/Ctr.*, 504 U.S. 505, 517 (1992) (plurality). When "gangsters" began using sawed-off rifles and shotguns to facilitate crimes in

the 1920s and 1930s, Congress enacted the NFA.  *See Lomont v. O'Neill*, 285 F.3d 9, 11 (D.C. Cir. 2002); David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective*, 17 Cumb. L. Rev. 585, 590-92 (1986).

Two NFA subsections address short rifles (the district court analyzed neither). The first concerns the specific evil that prompted the statute's passage, regulating as an NFA "firearm" "a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length."  26 U.S.C. § 5845(a)(4).  The second extends NFA regulation to "a rifle having a barrel or barrels of less than 16 inches in length."  26 U.S.C. § 5845(a)(3). Because the NFA defines "ma[d]e" to exclude production by a "qualified" manufacturer, § 5845(i), the first subsection covers only long guns shortened by users.  The second subsection reinforces the first by treating commercially produced short-barreled rifles the same way.

The Rule abandons the NFA's text.  Subsections (a)(3) and (a)(4) say nothing about pistols, accessories, or stabilizing braces.  Subsection (e) confirms that omission is intentional, expressly excluding "pistols" from the catch-all definition for an NFA "firearm."  26 U.S.C. § 5845(e).  The NFA thus reflects Congress's judgment that "the citizen" may "keep a pistol or revolver for his own protection without any restriction."  United States Br. 8, *United States v. Miller*, 307 U.S. 174

6

(1939) (quoting H.R. Rep. No. 73-1780 (1934)). By subjecting pistols to regulations Congress reserved for short-barreled rifles, the Rule rejects the NFA's clear text.

The Rule also ignores the structural relationship between subsections (a)(3) and (a)(4). In ATF's view, subsection (a)(3) applies whenever a brace is added to a pistol. 88 Fed. Reg. at 6,480. But only subsection (a)(4) encompasses a "modified" gun—that is, "a weapon made from a rifle." 26 U.S.C. § 5845(a)(4). Subsection (a)(3) does not use the words "made from" or "modified." These "differences in language" convey "differences in meaning," *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017), confirming subsection (a)(3) is limited to original manufacture.

Further, if subsection (a)(3) includes a weapon "made from" a pistol, then it also includes a weapon "made from" a rifle, rendering subsection (a)(4) "superfluous." *Contra RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645-47 (2012); *see also Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (2022) (rejecting interpretation that collapses two statutory provisions). Because braced pistols are neither "made from a rifle" nor manufactured as short-barreled rifles, they are excluded by the statutory text.

The Rule also rejects Congress's "obvious purpose." *See Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers v. Iowa N. Ry. Co.*, 37 F.4th 1399, 1409 (8th Cir. 2022). Congress targeted sawed-off rifles because the "concealability" of "a

7

long gun with a shortened barrel" "fosters its use in illicit activity" and causes a "somewhat indiscriminate accuracy." *United States v. Cox*, 906 F.3d 1170, 1185 (10th Cir. 2018) (citations omitted). But the reverse is true when a brace is attached to a pistol. "Rearward attachments, besides making a pistol less concealable, improve a pistol's stability, and thus a user's accuracy." *Mock*, 75 F.4th at 588 (Willett, J., concurring). "Accuracy, in turn, promotes safety." *Ibid.* ATF's decision to regulate lengthened short guns is the exact opposite of Congress's decision to regulate shortened long guns.

Because the GCA's definition of "short-barreled rifle" tracks the NFA's definition of "firearm," 18 U.S.C. § 921(a)(8), the Rule also violates the GCA.

### 2. Braced Pistols Are Not "Rifles."

Under the NFA and GCA, a "rifle" is "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder." 26 U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7).

The Rule misinterprets "designed" because it declines to consider evidence that a brace is designed to facilitate stabilizing support. In ATF's estimation, "stabilizing support" for non-shoulder firing is "not relevant to determine whether a firearm is designed, made, and intended to be fired from the shoulder." 88 Fed. Reg. at 6,510.

8

ATF is wrong. In *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982), the Supreme Court interpreted a statute prohibiting the sale of items "designed ... for use with illegal cannabis or drugs." *Id.* at 492. The Court found it "plain" and "clear" that "designed" includes "an item that is principally used with illegal drugs" but *not* "items which are principally used for nondrug purposes." *Id.* at 501. Thus, the statute would cover a pipe "typically used to smoke marihuana" but not "ordinary pipes"; a "roach clip" but not "paper clips sold next to Rolling Stone magazine." *Id.* at 494, 501-02 (quotations omitted). Just like Illinois could not overlook that a paperclip is "designed" for holding documents, ATF cannot criminalize braces by ignoring evidence they are "designed" for non-shouldering use.

The Supreme Court has applied similar reasoning under the NFA. In *Thompson/Center Arms*, the Court held someone did not "make" a "firearm" by packaging components that could "be converted not only into a short-barreled rifle, which is a regulated firearm, but also into a long-barreled rifle, which is not." 504 U.S. at 513. Because the "aggregation of parts" served a "useful purpose" other than "the assembly of a[n NFA] firearm," the Court reasoned that lenity required it to conclude the parts had "not been 'made' into a short-barreled rifle for purposes of the NFA." *Id.* at 512-13, 517-18. By ignoring evidence of an unregulated "useful purpose" for braces, the Rule misinterprets the statutes.

9

The Rule also misinterprets "intended." As the Fifth Circuit explained, the Rule employs an *ad hoc* "analysis of third parties' actions, such as the 'manufacturer's direct and indirect marketing and promotional materials,' and 'information demonstrating the likely use of the weapon in the general community.'" *Mock*, 75 F.4th at 585-56; *see* 88 Fed. Reg. at 6,544. That approach to intent misinterprets the statute and is otherwise suspect because it "would hold citizens criminally liable for the actions of others, who are likely unknown, unaffiliated, and uncontrollable by the person being regulated." *Mock*, 75 F.4th at 586; *see also Rec. Head Corp. v. Sachen*, 682 F.2d 672, 677 (7th Cir. 1982) (holding third-party "advertising" and "opinion" had no "conceivable relevance to the intent of the seller"); *United States v. Biro*, 143 F.3d 1421, 1428 (11th Cir. 1998) (holding "customer's intended use" has no bearing on "design"). By considering third-party activities, the Rule's interpretation of "intended" violates the NFA and GCA.

### 3. The Rule Violates Lenity.

At a minimum, lenity requires the Rule be set aside. "The rule of lenity states that ambiguities in criminal statutes should be resolved in favor of the defendant." *United States v. Buford*, 54 F.4th 1066, 1068 (8th Cir. 2022). Because the NFA and GCA authorize criminal penalties, lenity applies even "in a civil setting." *Thompson/Ctr*, 504 U.S. at 517-18 (plurality); *id.* at 519 (Scalia, J., concurring). Here, the text, structure, history, and purpose of the NFA and GCA unambiguously

10

foreclose their application to braced pistols. But if the Court disagrees, then the statutes are at least grievously ambiguous as applied to braces.

The Rule's preamble explains why. When ATF first considered the stabilizing braces at issue here, it understood that their attachment to a pistol "d[oes] 'not convert that weapon to be fired from the shoulder'" and thus that "such a firearm *would not* be subject to NFA controls." 88 Fed. Reg. at 6,479 (quoting Letter from ATF #2013-0172 (Nov. 26, 2012) (emphasis in original letter)). ATF maintained this position for over a decade, issuing many interpretation letters reiterating it to the public. *Id.* at 6,502 n.84; *see also* R.Doc. 1-21 at 2. The Department also asserted this position in criminal prosecutions, assuring courts that "a firearm with a pistol brace" would "not be a rifle under the NFA." R.Doc. 1-19 at 38:9-15. Even the Notice of Proposed Rulemaking agreed, attempting to reconcile past decisions through a points system. 86 Fed. Reg. 30,826, 30,829-32 (June 10, 2021).

Then ATF reversed course. Apparently "realizing" for the first time that pistols with stabilizing braces have always and unambiguously been covered by the NFA, ATF through the Rule decided to effectively render all brace-equipped pistols short-barreled rifles. That "sounds absurd, because it is." *Sekhar v. United States*, 570 U.S. 729, 738 (2013). For ATF to fundamentally change its longstanding position demonstrates at the very least that the NFA is grievously ambiguous with respect to whether it covers brace-equipped pistols and thus that lenity should apply.

11

Recent decisions from the Fifth and Sixth Circuits confirm lenity is appropriate here. In *Hardin v. ATF*, 65 F.4th 895 (6th Cir. 2023), the Sixth Circuit held unlawful an ATF rule banning "bump stocks" where, like here, ATF had allowed them "[f]or over a decade." *Id.* at 897. "ATF's own flip flop in its position," the court explained, showed that the statute was "subject to more than one reasonable interpretation." *Id.* at 898. Applying lenity, the Sixth Circuit was "bound to construe the statute in [the challenger]'s favor." *Id.* at 902. Similarly, in *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023), the *en banc* Fifth Circuit applied lenity to invalidate a rule purporting to interpret the NFA where ATF had "construed the same statute in two, inconsistent ways at different points in time." *Id.* at 469-71.

The same analysis applies here. Just like in *Hardin* and *Cargill*, ATF is reversing its long-held position with respect to a particular firearms accessory. "The law hasn't changed, only [the] agency's interpretation of it." *Guedes v. ATF*, 140 S. Ct. 789, 790 (2020) (statement of Gorsuch, J.). And here, just like there, ATF's reversal subjects to criminal penalties any individuals who obeyed ATF's previous rulings. If ATF believed *for years* that brace-equipped pistols are not subject to NFA or GCA controls, the application of the statutes to braces must, at minimum, be grievously ambiguous. Lenity thus demands that the Rule be set aside.

The district court rejected lenity because it found the definition of "rifle" "not unclear." R.Doc. 90 at 14–16. But elsewhere in its opinion the district court held

12

otherwise, finding Congress had used only "ambigu[ous]" terms that "did not shed any additional light on the definition of rifle." *Id.* at 13. And the district court never attempted to square its lenity analysis with ATF's prior construction of the statutes. At a minimum, the statute is grievously ambiguous as applied to braces and the Rule must be set aside.

### B. The Rule Is Arbitrary And Capricious.

#### 1. The Factors Are Holistically Arbitrary.

The infinitely malleable nature of the Rule renders it arbitrary and capricious. When an agency intends to apply "a multi-factor test through case-by-case adjudication," it must provide "predictability and intelligibility" to regulated parties. *LeMoyne-Owen Coll. v. NLRB*, 357 F.3d 55, 61 (D.C. Cir. 2004) (Roberts, J.). Otherwise, those seeking to comply cannot know "which factors are significant and which less so, and why." *Ibid.*; *see also Kearney Reg'l Med. Ctr., LLC v. HHS*, 934 F.3d 812, 816 (8th Cir. 2019).

The Rule fails to articulate a comprehensible standard. As the Fifth Circuit recognized, ATF's "six-part test provides no meaningful clarity about what constitutes an impermissible stabilizing brace." *Mock*, 75 F.4th at 585. Instead, it "vests the ATF with complete discretion to use a subjective balancing test to weigh six opaque factors on an invisible scale." *Id.* at 584. ATF claims this test is "objectiv[e]," but then simultaneously declares that its factors "are not themselves

13

determinative and that adjudications are made on a case-by-case basis." *Id.* at 585. Putting this together, the Fifth Circuit correctly recognized that under the Rule it is "nigh impossible for a regular citizen to determine what constitutes a braced pistol." *Ibid.* A law-abiding gun "owner may not be on notice that his firearm is subject to criminal penalties without registration." *Ibid.*; *see also Innovator Enterprises, Inc. v. Jones*, 28 F. Supp. 3d 14, 25-26 (D.D.C. 2014) (invalidating ATF's six-factor test where it left parties "guessing" as to how to apply the factors).

The Rule's preamble confirms the error. ATF claimed that its test was designed to be neither "confusing" nor "ambiguous" such that "the public" could "evaluate whether a weapon incorporating a 'stabilizing brace'" is "a short-barreled rifle subject to the NFA." 88 Fed. Reg. at 6,551. Thus, its promulgation of a test that offers "no meaningful clarity," *Mock*, 75 F.4th at 585, betrays "a clear error of judgment," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotations omitted).

If that were not enough, ATF has indicated that it will use the Rule to achieve the Administration's predetermined objective. ATF predicts that under the Rule 99% of pistols equipped with stabilizing braces will be subject to NFA regulation. R.Doc. 1-5 at 21. And ATF is already making good on its prediction, issuing 60 contemporaneous adjudications and finding 100% are "short-barreled rifles." *See* R. Docs. 1-6, 1-7. These adjudications confirm that the Rule is arbitrary because the

14

agency felt no need to even explain how it applied its discretionary test. *Mock*, 75 F.4th at 574-75, 584-86. A rule that fails to apprise the public of its responsibilities and leaves ATF free to reach any result it wants without explanation is arbitrary and capricious.

## 2. The Rule's Individual Factors Are Arbitrary.

The Rule's incomprehensibility infects its individual factors too. The Rule's preamble touts that several factors—surface area, weight, length, and length of pull—assess features with "quantifiable, easily measured metrics." 88 Fed. Reg. at 6,513. But the Rule refuses to quantify them.

Instead, ATF says it will check whether any specific gun is "consistent with" an unspecified subset of 12,000 different rifles in ATF's database. *See id.* at 6,514 n.103, 6,575. But these vary wildly. Of the few dozen examples ATF provides in the Rule, weights range from 2 to 10 pounds, lengths from 18-1/2 to 38-1/2 inches, and lengths of pull from 11 to 17 inches. *Id.* at 6,514-19, 6,535-37.

In short, ATF "does not adequately explain the standard" it will employ. *Kearney*, 934 F.3d at 816. Under the Rule, there is no way to determine which of the 12,000 rifles ATF will deem relevant comparator(s). And even if a party could identify them, ATF does not explain what it means to be "consistent with" them. ATF's "unbounded comparative analysis" is arbitrary. *Tripoli Rocketry Ass'n, Inc. v. ATF*, 437 F.3d 75, 82 (D.C. Cir. 2006).

Nor does ATF explain *why* it adopted these unbounded definitions. Commenters urged ATF to adopt precise metrics so that they could determine whether a braced pistol would trigger criminal penalties. 88 Fed. Reg. at 6,513, 6,521-22; *see also Mock*, 75 F.4th at 583 ("the public … criticized the subjective nature of the purportedly objective criteria of [proposed] Worksheet 4999"). Yet, without explanation, ATF declined to provide precise metrics for features it acknowledged were measurable (i.e., surface area, length, weight, and length of pull) and adopted factors even more malleable than its proposed rule. Thus, ATF "entirely failed to consider an important aspect of the problem," *State Farm*, 463 U.S. at 43, and failed "to consider responsible alternatives to its chosen policy and to give a reasoned explanation for its rejection of such alternatives," *Spirit Airlines, Inc. v. FAA*, 997 F.3d 1247, 1255 (D.C. Cir. 2021) (citation omitted).

### 3. The Rule's Facile Comparisons Are Arbitrary.

ATF claims that if a braced pistol's physical features are "consistent with ... similarly designed rifles," it is "an indicator that" the braced pistol is intended for "shoulder firing." 88 Fed. Reg. at 6514. That fallacious reasoning shows ATF has not learned from previous judicial correction.

In *Innovator Enterprises, Inc. v. Jones*, 28 F. Supp. 3d 14 (D.D.C. 2014), ATF purported to classify a "firearm silencer" by analyzing whether a product had "physical characteristics that are consistent with those of known firearm silencers."

16

*Id.* at 24. "[T]his methodology" was arbitrary, the court explained, because "[l]earning that one object has three characteristics in common with some category may not be very helpful in determining whether the object in question belongs in that category." *Id.* at 25-26. For example, "Bud Light is not 'Single-malt Scotch,' just because it is frequently served in a glass container, contains alcohol, and is available for purchase at a tavern." *Ibid.* Likewise, a "mouse is not an 'elephant' solely because it has three characteristics that are common to known elephants: a tail, gray skin, and four legs." *Ibid.*

Under the Rule, ATF proposes to use a similarly arbitrary methodology for determining what is a "rifle." Thus, the Rule must be set aside.

### 4. The Rule Cherry-Picks "Community Information."

The Rule permits ATF to rely on third-party "information" to "demonstrat[e] the likely use of the weapon in the general community." 88 Fed. Reg. at 6,575. Under this factor, ATF cites as probative two individuals misusing a stabilizing brace in isolated circumstances. *Id.* at 6,545-46. But then ATF dismisses manufacturer training materials and examples of proper use by claiming that "the method in which a 'stabilizing brace' may be used, in isolated circumstances or by a single individual" is not even "relevant." *Id.* at 6,519. Such "internally inconsistent" reasoning is plainly "arbitrary and capricious." *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1028 (D.C. Cir. 2018).

17

## 5. The Rule Omits Costs And Reliance Interests.

ATF concedes that it was required to consider costs and benefits, 88 Fed. Reg. at 6,571-74, consistent with the statutory requirements to determine whether the Rule was "needful" and "necessary." 26 U.S.C. § 7805(a); 18 U.S.C. § 926(a); *see Michigan v. EPA*, 576 U.S. 743, 752 (2015). A deficient cost-benefit analysis renders a rule arbitrary and capricious. *See Owner-Operator Indep. Drivers Ass'n v. FMCSA*, 494 F.3d 188, 203-06 (D.C. Cir. 2007).

Here, despite the Rule's January 2023 release, ATF's cost estimate inexplicably excludes costs associated with all stabilizing braces sold in 2020, 2021, and 2022. *See* R.Doc. 1-5 at 18. But ATF acknowledges these are three of the six highest-production years. *See* 88 Fed. Reg. at 6,560 (brace production "t[ook] off" in 2017). Indeed, more than *2.3 million braces* have been sold since 2020 by a single company. R.Doc. 1-10 ¶ 15. ATF thus failed to consider the costs and reliance interests of millions of individuals who purchased braces since 2020, rendering the Rule arbitrary. *Citizens Telecomms. Co. of Minn., LLC v. FCC*, 901 F.3d 991, 1010-11 (8th Cir. 2018) (agency must consider "all" costs); *DHS v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1913-15 (2020); *accord Texas Gun Rights v. ATF*, No. 4:23-cv-00578, slip op. at 6–8 (N.D. Tex. Oct. 4, 2023).

\*　　\*　　\*

18

The district court purported to reject Appellants' arbitrary-and-capricious arguments but appeared to confuse them with an unrelated statutory argument. R.Doc. 90 at 17–18. It likewise failed to address Appellants' uncontested evidence that ATF omitted from its assessment of costs more than 2.3 million braces sold since 2020. *Id.* at 19. Thus, the district court's analysis was unpersuasive.

### C. The Unlawful Adjudications Confirm The Rule Is Arbitrary.

ATF also issued 60 contemporaneous adjudications with its Rule. *See* R.Docs. 1-6, 1-7. "No explanations are included for how the ATF came to its conclusion as to each weapon and platform." *Mock*, 75 F.4th at 574-75. The adjudications classify as short-barreled rifles pistols equipped with the most popular stabilizing braces in the country.

The adjudications are patently arbitrary because they do not offer *any* "reasoned explanation." *Regents*, 140 S. Ct. at 1916. The district court excused ATF's failure because it believed the adjudications were "representative" of how ATF intended to apply the Rule in the future. R.Doc. 90 at 22. But whatever "representative" value the adjudications may have for *future* adjudications of *different* configurations, the district court overlooked that "the sixty contemporaneous adjudications that the ATF released" are undoubtedly final as to the classified configurations. *Mock*, 75 F.4th at 584; *see Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

19

The adjudications also confirm that the Rule allows ATF to reach whatever result it wants. As the Fifth Circuit recognized, ATF's adjudications make little sense. "For example, it is wholly unclear why the AR-type firearm with an SB-Mini accessory, adjudicated as an approved braced handgun in the NPRM, is not adjudicated the same way under the Final Rule." *Mock*, 75 F.4th at 585. And ATF failed to provide even "a single given example of a pistol with a stabilizing brace that would constitute an NFA-exempt braced pistol." *Id.* at 575. If that is how the Rule works, then it plainly "does not adequately explain the standard on which [ATF's] decision[s]" will be "based." *Kearney*, 934 F.3d at 816.

## II. APPELLANTS FACE IRREPARABLE HARM WITHOUT AN INJUNCTION.

Absent preliminary relief, commercial Appellants will suffer irreparable economic harm. Ninety-nine percent of SB Tactical's revenue comes from stabilizing braces. R.Doc. 1-10 ¶ 42. Prior to the Rule, SB Tactical was a profitable company. But "[t]he market for the products subject to the Final Rule has evaporated." *Mock*, 2023 WL 6457920, at *15.

Specifically, the Rule has caused a 97% collapse in SB Tactical's sales. Attachment A (R.Doc. 95-2, Second Supp. Decl. Jeff Creamer); *see* R.Doc. 66-1 ¶¶ 10-15. Instead of making money, SB Tactical is now losing more than $150,000 per month. Attachment A ¶¶ 7-8. After the Rule was proposed, the company laid

20

off 61% of its workforce.  R.Doc. 1-10 ¶ 43.  While waiting for a decision from the district court, it laid off 25% of its remaining workforce and cut salaries.  Attachment A ¶¶ 9-10.  More layoffs and salary cuts are imminent, absent relief.  *Id.* ¶ 11.  SB Tactical is, for all practical purposes, a "zombie" company, drawing on finite reserve capital and emergency measures to stay afloat.

These harms are irreparable.  Congress has not waived federal sovereign immunity for "money damages," 5 U.S.C. § 702, so, at the end of this lawsuit, commercial Appellants will "be unable to recover any damages."  *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1473 (8th Cir. 1994).  Because SB Tactical's ongoing six-figure monthly operating losses are "unrecoverable," they "qualify as irreparable harm."  *Iowa Utilities Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996); *see also All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 251 (5th Cir. 2023).  As does its "loss of" "employee[s]."  *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022).

In addition, the Rule disparages commercial Appellants and retroactively subjects their customers to new regulations backed by criminal penalties, R.Doc. 1-10 ¶¶ 35-37, 46; R.Doc. 1-11 ¶ 18, resulting in the unrecoverable "loss of consumer goodwill," *Iowa Utils. Bd.*, 109 F.3d at 426; *Kroupa v. Nielsen*, 731 F.3d 813, 820, 821 (8th Cir. 2013).

The States have suffered irreparable harm, too.  ATF's Rule expressly subjects to registration braced weapons possessed by States or their subdivisions and

21

confirms they will incur compliance costs analyzing guns in their possession. 88 Fed. Reg. at 6,567; *see Rest. L. Ctr. v. United States Dep't of Lab.*, 66 F.4th 593, 597–600 (5th Cir. 2023) (finding irreparable compliance costs conceded by agency in rule text). The Rule also strikes an irreparable blow to the States' citizens' safety, especially when it comes to allowing all persons (including persons who require some assistance to hold a firearm, such as the elderly and disabled) to defend themselves safely. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982) ("[A] State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general."). That continuing harm to the public's well-being is irreparable.

Ongoing irreparable harm to all Appellants warrants an injunction.

## III. THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR AN INJUNCTION.

Here, the balance-of-harms and public-interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors favor an injunction to protect "the public's confidence that its government agencies act independently, thoroughly, and transparently" and that they "comply with the laws that bind them." *Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 997 (8th Cir. 2011) (quotations and alterations omitted); *see also League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). An injunction will also "preserve" the pre-Rule

"status quo" that existed for the last decade, "pending the outcome of the" appeal, *Nebraska*, 52 F.4th at 1048, putting Appellants on the same footing as numerous parties already covered by injunctive relief from the unlawful Rule. *See, e.g.*, *Mock*, 2023 WL 6457920, at *18.

## CONCLUSION

The Court should enjoin enforcement of the Rule and adjudications pending appeal.

23

October 10, 2023

Respectfully Submitted,

/s/ *Stephen J. Obermeier*
Stephen J. Obermeier
Thomas M. Johnson, Jr.
Michael D. Faucette
Jeremy J. Broggi
Boyd Garriott
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
Tel: 202.719.7000
Fax: 202.719.7049
SObermeier@wiley.law
TMJohnson@wiley.law
MFaucette@wiley.law
JBroggi@wiley.law
BGarriott@wiley.law

Benjamin J. Sand (ND ID #07981)
**CROWLEY FLECK PLLP**
100 W Broadway Ave
Bismarck, ND 58501
Tel: 701.223.6585
Fax: 701.222.4853
bsand@crowleyfleck.com

*Counsel for Appellants FRAC, SB Tactical, B&T, and Richard Cicero*

/s/ *Lindsay See*
PATRICK MORRISEY
Attorney General
LINDSAY SEE
Solicitor General
MICHAEL R. WILLIAMS
Principal Deputy Solicitor General

/s/ *Philip Axt*
DREW H. WRIGLEY
Attorney General
PHILIP AXT
Solicitor General

Office of the West Virginia Attorney General
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
(681) 313-4550
Lindsay.S.See@wvago.gov
Michael.R.Williams@wvago.gov

*Counsel for Appellant State of West Virginia*

North Dakota Attorney General's Office
500 North 9th Street
Bismarck, ND 58501
(701) 328-2210
pjaxt@nd.gov

*Counsel for Appellant State of North Dakota*

*/s/ Edmund G. LaCour Jr.*
STEVE MARSHALL
Attorney General
EDMUND G. LACOUR JR.
Solicitor General

Alabama Attorney General's Office
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

*Counsel for Appellant State of Alabama*

*/s/ Charles E. Brasington*
TREG TAYLOR
Attorney General
CHARLES E. BRASINGTON
Assistant Attorney General

Alaska Attorney General's Office
1031 West Fourth Avenue, Suite 200
Anchorage, AK 99501
Phone: (907) 269-6612
charles.brasington@alaska.gov

*Counsel for Appellant State of Alaska*

*/s/ Dylan L. Jacobs*
TIM GRIFFIN
Attorney General
NICHOLAS J. BRONNI
Solicitor General
DYLAN L. JACOBS
Deputy Solicitor General

*/s/ Natalie P. Christmas*
ASHLEY MOODY
Attorney General
NATALIE P. CHRISTMAS (Fla. Bar 1019180)
Counselor to the Attorney General

Florida Attorney General's Office

Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-6302
nicholas.bronni@arkansasag.gov
dylan.jacobs@arkansasag.gov

*Counsel for Appellant State of Arkansas*

The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
natalie.christmas@myfloridalegal.com

*Counsel for Appellant State of Florida*

/s/ Stephen J. Petrany
CHRISTOPHER M. CARR
Attorney General
STEPHEN J. PETRANY
Solicitor General

Georgia's Attorney General's Office
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Appellant State of Georgia*

/s/ Joshua N. Turner
RAÚL R. LABRADOR
Attorney General
THEODORE J. WOLD
Solicitor General
JOSHUA N. TURNER
Deputy Solicitor General

Idaho Attorney General's Office
P.O. Box 83720-0010
Boise, ID 83720-0010
(208) 334-2400
(208) 854-8071 (fax)
josh.turner@ag.idaho.gov

*Counsel for Appellant State of Idaho*

/s/ Betsy M. Denardi
THEODORE E. ROKITA
Attorney General
BETSY M. DENARDI
Director of Complex Litigation

Indiana Attorney General's Office
Indiana Government Center South
302 W. Washington St., 5th Floor
Indianapolis, IN 46204

/s/ Eric H. Wessan
BRENNA BIRD
Attorney General
ERIC H. WESSAN
Solicitor General

Iowa Attorney General's Office
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164

(317) 232-6231
Betsy.DeNardi@atg.in.gov

*Counsel for Appellant State of Indiana*

(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

*Counsel for Appellant State of Iowa*

/s/ Jesse A. Burris
KRIS KOBACH
Attorney General
JESSE A. BURRIS
Assistant Attorney General

Kansas Attorney General's Office
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Tel: (785) 368-8197
Jesse.Burris@ag.ks.gov

*Counsel for Appellant State of Kansas*

/s/ Aaron J. Silletto
DANIEL CAMERON
Attorney General
AARON J. SILLETTO
Assistant Attorney General

Kentucky Attorney General's Office
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Phone: (502) 696-5300
Aaron.Silletto@ky.gov

*Counsel for Appellant Commonwealth of Kentucky*

/s/ Elizabeth B. Murrill
ELIZABETH B. MURRILL
Solicitor General
J. SCOTT ST. JOHN
Deputy Solicitor General
TRACY SHORT
Assistant Attorney General
MORGAN BRUNGARD
Assistant Solicitor General

Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, LA 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

/s/ Justin L. Matheny
LYNN FITCH
Attorney General
JUSTIN L. MATHENY
Deputy Solicitor General

Mississippi Attorney General's Office
550 High Street, Suite 1200
Jackson, MS 39201
Tel: (601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for Appellant State of Mississippi*

shortt@ag.louisiana.gov
brungardm@ag.louisiana.gov

*Counsel for Appellant State of
Louisiana*

*/s/ Jeff P. Johnson*
ANDREW BAILEY
Attorney General
JOSHUA M. DIVINE
Solicitor General
JEFF P. JOHNSON
Deputy Solicitor General

Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-8870
josh.divine@ago.mo.gov
jeff.johnson@ago.mo.gov

*Counsel for Appellant State of Missouri*

*/s/ Christian B. Corrigan*
AUSTIN KNUDSEN
Attorney General
CHRISTIAN B. CORRIGAN
Solicitor General
PETER MARTIN TORSTENSEN, JR.
Assistant Solicitor General

Montana Attorney General's Office
215 N Sanders St
Helena, MT 59601
(406) 444-2707
Christian.Corrigan@mt.gov
Peter.Tortstensen@mt.gov

*Counsel for Appellant State of
Montana*

*/s/ Eric J. Hamilton*
MICHAEL T. HILGERS
Attorney General
ERIC J. HAMILTON
Solicitor General

Nebraska Attorney General's Office
2115 State Capitol
Lincoln, NE 68509
(402) 471-2683
Eric.Hamilton@nebraska.gov

*/s/ Brandon F. Chase*
JOHN M. FORMELLA
Attorney General
BRANDON F. CHASE
Assistant Attorney General

New Hampshire Department of Justice
33 Capitol Street
Concord, NH 03301
(603) 271-3650
Brandon.F.Chase@doj.nh.gov

*Counsel for Appellant State of Nebraska*

*Counsel for Appellant State of New Hampshire*

/s/ Garry M. Gaskins, II
GENTNER F. DRUMMOND
Attorney General
GARRY M. GASKINS, II
Solicitor General
ZACH WEST
Director of Special Litigation
AUDREY A. WEAVER
Assistant Solicitor General

Oklahoma Attorney General's Office
State of Oklahoma
313 N.E. 21st Street
Oklahoma City, OK 73105
(405) 521-3921
Garry.Gaskins@oag.ok.gov
Audrey.Weaver@oag.ok.gov

*Counsel for Appellant State of Oklahoma*

/s/ J. Emory Smith
ALAN WILSON
Attorney General
J. EMORY SMITH, JR.
Deputy Solicitor General

South Carolina Attorney General's Office
Post Office Box 11549
Columbia, South Carolina 29211
Phone: (803) 734-3680
Fax: (803) 734-3677
Email:   ESmith@scag.gov

*Counsel for Appellant State of South Carolina*

/s/ Charles D. McGuigan
MARTY J. JACKLEY
Attorney General
CHARLES D. MCGUIGAN
Chief Deputy Attorney General

South Dakota Attorney General's Office
1302 E. Highway 4, Suite 1
Pierre, SD 57501
605-773-3215
Charles.Mcguigan@state.sd.us

/s/ Whitney D. Hermandorfer
JONATHAN SKRMETTI
Attorney General and Reporter
ANDRÉE S. BLUMSTEIN
Solicitor General
WHITNEY D. HERMANDORFER
Assistant Solicitor General

Tennessee Attorney General's Office
P.O. Box 20207
Nashville, TN 37202
(615) 253-5642
Clark.Hildabrand@ag.tn.gov

*Counsel for Appellant State of South Dakota*

Whitney.Hermandorfer@ag.tn.gov

*Counsel for Appellant State of Tennessee*

/s/ Melissa Holyoak
SEAN REYES
Attorney General
MELISSA HOLYOAK
Solicitor General

Utah Attorney General's Office
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
(801) 538-9600
melissaholyoak@agutah.gov

*Counsel for Appellant State of Utah*

/s/ Andrew N. Ferguson
JASON MIYARES
Attorney General
ANDREW N. FERGUSON
Solicitor General
KEVIN M. GALLAGHER
Deputy Solicitor General
M. JORDAN MINOT
Assistant Solicitor General

Virginia Attorney General's Office
202 North 9th Street
Richmond, Virginia 23219
(804) 786-2071
aferguson@oag.state.va.us
kgallagher@oag.state.va.us

*Counsel for Appellant Commonwealth of Virginia*

/s/ Ryan Schelhaas
BRIDGET HILL
Attorney General
RYAN SCHELHAAS
Chief Deputy Attorney General

Wyoming Attorney General's Office
Counsel for the State of Wyoming
109 State Capitol
Cheyenne, WY 82002

Telephone: (307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for Appellant State of Wyoming*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 5,200 words as determined by the word-counting feature of Microsoft Word.

This motion also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word in 14-point proportionally spaced Times New Roman font.

This motion complies with the electronic-filing requirements of Local Rule 28A(h)(2) because it was scanned for viruses using Windows Defender and no virus was detected.

/s/ Stephen J. Obermeier
Stephen J. Obermeier

## CERTIFICATE OF SERVICE

I certify that on October 10, 2023, I electronically filed the foregoing motion with the Clerk of the Court by using the CM/ECF system, and that the CM/ECF system will accomplish service on all parties represented by counsel who are registered CM/ECF users.

/s/ Stephen J. Obermeier
Stephen J. Obermeier
