No. 23-3230

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

———————————

FIREARMS REGULATORY ACCOUNTABILITY COALITION, INC., *ET AL.*,

Plaintiffs-Appellants,

v.

MERRICK B. GARLAND, *ET AL.*,

Defendants-Appellees.

———————————

On Appeal from the United States District Court
for the District of North Dakota

———————————

## RESPONSE TO EMERGENCY MOTION
## FOR INJUNCTION PENDING APPEAL

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

MAC SCHNEIDER
  *United States Attorney*

ABBY C. WRIGHT
SEAN R. JANDA
BEN LEWIS
  *Attorneys, Appellate Staff
  Civil Division, Room 7260
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  202-514-3388*

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................1

STATEMENT .........................................................................................................2

ARGUMENT ..........................................................................................................5

I.      Plaintiffs Are Not Likely to Succeed on the Merits ...............................5

        A.      The Rule Comports with the NFA ...............................................5

        B.      Plaintiffs' Remaining Arguments Fail .......................................12

II.     Plaintiffs Have Not Established That the Equitable Factors Support an
        Injunction...............................................................................................17

CONCLUSION .................................................................................................... 22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

Appellate Case: 23-3230     Page: 2     Date Filed: 10/20/2023 Entry ID: 5328305

**INTRODUCTION**

Congress regulated short-barreled rifles under the National Firearms Act (NFA) as especially dangerous weapons. A short-barreled rifle is a firearm "designed," "made," and "intended" to be "fired from the shoulder," with a barrel shorter than 16 inches. 26 U.S.C. §§ 5841, 5845. Recently, some manufacturers have sold firearms with attachments marketed as "stabilizing braces." Though these manufacturers claim the attachments are designed to assist with one-handed firing and thus the firearms are not rifles, many braces are virtually indistinguishable from shoulder stocks and are designed to facilitate shoulder firing.

In response, ATF issued an interpretive rule, *see* Factoring Criteria for Firearms With Attached "Stabilizing Braces," 88 Fed. Reg. 6478 (Jan. 31, 2023) (Rule). The Rule clarifies that the statutory design-and-intent standard does not turn only on the manufacturer's stated intent but also on the weapon's design and other evidence. The Rule then sets forth evidence ATF will consider when determining whether any particular firearm made using a stabilizing brace is designed to be shoulder-fired.

Plaintiffs challenged the Rule and sought a preliminary injunction. When that was denied, they appealed and moved for an injunction pending appeal. Plaintiffs are not entitled to that relief. The Rule is lawful, and the public interest in clarifying statutory requirements for weapons that Congress deemed particularly dangerous outweighs any minimal harms plaintiffs assert.

1

**STATEMENT**

**1.** The NFA, 26 U.S.C. § 5801 *et seq.*, regulates "dangerous weapons," H.R. Rep. No. 73-1780, at 1 (1934), that can "be used readily and efficiently by criminals," H.R. Rep. No. 83-1337, at A395 (1954); *see United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 516-17 (1992) (plurality op.). One such firearm is a short-barreled rifle. 26 U.S.C. § 5845(a)(3). As relevant here, a "rifle" is a firearm "designed or redesigned, made or remade, and intended to be fired from the shoulder." *Id.* § 5845(c).

As with other NFA-regulated weapons, short-barreled rifles must be registered, 26 U.S.C. § 5841, and a person wishing to make or transfer a short-barreled rifle generally must pay a $200 tax and receive approval. *Id.* §§ 5811-5812, 5821-5822. Any person engaged in the business of importing, manufacturing, or dealing in short-barreled rifles must register and pay a special occupational tax. *Id.* §§ 5801-5802.

To enforce the NFA, ATF must therefore determine which firearms constitute short-barreled rifles. In recent years, ATF has received requests to determine whether various firearms configured with "stabilizing braces" are "rifles." *See* 88 Fed. Reg. at 6482-84. In general, manufacturers design these devices to attach to the rear of a heavy pistol—such as an AR-type-rifle variant—and some manufacturers claim that they are meant to attach to or rest against a shooter's forearm to provide additional stability. *See id.* at 6518. But frequently, they are virtually indistinguishable from shoulder stocks, as the below photographs demonstrated, and are marketed and used as devices to enable shoulder-firing. *See id.* at 6479, 6527-29, 6544-47.

2



*See* R. Doc. 63, at 5 (top item equipped with "brace" and bottom equipped with stock).

In the majority of previous cases, ATF classified braced firearms as short-barreled rifles, but those classifications were "mixed." 88 Fed. Reg. at 6482. Over time, ATF became concerned that its classifications did not always apply the same criteria to determine whether the weapon was a rifle and, in some instances, were inconsistent with the NFA, creating confusion among manufacturers and purchasers. *See generally id.* at 6479-505 (describing this history).

ATF issued the Rule "to provide clarity to the firearm industry and public on how ATF evaluates firearms equipped with a 'stabilizing brace.'" *See* 88 Fed. Reg. at 6494. The Rule primarily clarifies that, in determining whether a particular braced firearm is designed to be shoulder-fired, ATF will consider not only a manufacturer's assertions about how the firearm is designed but also the firearm's design features and other evidence.

The Rule further elaborates that the statutory definition of "rifle" encompasses a firearm equipped with a stabilizing brace "that provides surface area that allows the

3

weapon to be fired from the shoulder, provided that other" evidence "indicate[s] that the weapon is designed, made, and intended to be fired from the shoulder." 88 Fed. Reg. at 6569. The Rule then identifies evidence that ATF will consider in making this determination, including (i) the weapon's "weight or length"; (ii) its "length of pull"; (iii) the existence of "sights or a scope" that require shouldering to use; (iv) the extent to which the rear surface area comes from an "attachment that is necessary for the cycle of operations"; (v) "marketing and promotional materials"; and (vi) the "likely use of the weapon in the general community." *Id.* at 6569-70.

The Rule provides compliance options for individuals who possess unregistered brace-equipped short-barreled rifles, with the Department exercising its enforcement discretion to permit registration by May 31, 2023, without penalty or tax. 88 Fed. Reg. at 6480-81. Finally, because not all previous classification letters had followed a proper approach, the Rule clarifies that those letters are no longer valid. *Id.*

ATF also posted slideshows with photographs of some common brace-and-pistol combinations that it believed were short-barreled rifles to "give the public and manufacturers as much notice as possible" to aid compliance with the statute before May 31. R. Doc. 63-1, at 3-4.[1]

---

[1] Although ATF intended to "issue formal classification letters to manufacturers explaining its reasoning and analysis" for each determination, R. Doc. 63-1, at 3, ATF stopped issuing those letters after it was enjoined from enforcing the Rule against plaintiffs in cases that included membership organizations because ATF did not know whether any manufacturer to whom it might issue a letter was covered by an injunction.

4

**2.** Plaintiffs—a firearm manufacturer, a stabilizing-brace manufacturer, an individual who has firearms equipped with stabilizing braces, a trade association, and various States—challenged the Rule and moved for a preliminary injunction. The district court denied the motion, concluding that plaintiffs did not have a likelihood of success on the merits of any claim. *See* R. Doc. 90.

Plaintiffs appealed and moved for an injunction pending appeal.

## ARGUMENT

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). To justify an injunction pending appeal, a movant must show that it is "likely to succeed on the merits" of its appeal, that it "is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 20; *see also Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998) (equating requirements for an injunction pending appeal to requirements for a preliminary injunction). Plaintiffs have failed to carry that burden.

## I.     Plaintiffs Are Not Likely to Succeed on the Merits

### A.     The Rule Comports with the NFA

**1.** A weapon is a "rifle" if it is "designed," "made," and "intended to be fired from the shoulder." 26 U.S.C. § 5845(c). The Rule primarily clarifies two aspects of ATF's interpretation of the statute: First, whether a braced firearm is designed to be shoulder-fired is not determined solely by reference to a manufacturer's claimed intent

but also requires evaluating other evidence. *See* 88 Fed. Reg. at 6495. Second, the Rule identifies evidence that ATF considers probative of whether a braced firearm is intended to be shoulder-fired. *See id.* at 6569-70. Both clarifications are consistent with the statute.

First, the NFA does not require ATF to uncritically accept a manufacturer's statements about whether its product is designed to be shoulder-fired. To the contrary, it is a "very familiar [approach] in the law" to use "objective" evidence to "ferret[] out a party's" true intent, notwithstanding the party's claimed intentions. *Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 601-02 (1st Cir. 2016) (collecting cases). Multiple courts of appeals have therefore held that a product's intended use may be determined by reference to evidence beyond stated intent, such as design features. *See id.* at 600, 602; *see also United States v. Syverson*, 90 F.3d 227 (7th Cir. 1996).

Second, ATF also properly identified evidence that is probative of whether a particular braced firearm is designed to be shoulder-fired. This includes both evidence related to the weapon's design features—such as whether the weapon includes certain features useful for shoulder firing—and more direct evidence, including how the weapon is marketed and used. And the Rule explains why each category of evidence is probative. *See* 88 Fed. Reg. at 6510-43.

**2.** In nevertheless contending that the Rule is contrary to the statute, plaintiffs do not generally dispute that ATF may look beyond a manufacturer's claimed intent nor do they generally dispute that evidence like design features is relevant. Instead,

6

plaintiffs argue unpersuasively that (6-8) that the NFA categorically excludes firearms made with braces, that the Rule places too little (8-9) or too much (10) weight on how a braced firearm is generally used, and that (10-13) the rule of lenity compels their construction.

**a.** At the outset, plaintiffs contend (6-8) that the NFA's regulation of "a rifle having a barrel or barrels of less than 16 inches in length," 26 U.S.C. § 5845(a)(3), applies only to firearms that are rifles as "original[ly] manufacture[d]," Mot.7—and, thus, categorically excludes short-barreled rifles that are made by attaching a stabilizing brace to a heavy pistol. But plaintiffs' interpretation finds no support in the relevant statutory provisions; neither § 5845(a)(3) nor the underlying definition of "rifle," *see* 26 U.S.C. § 5845(c), includes any original-manufacture limitation. To the contrary, the NFA defines "rifle" to include not just weapons "designed" and "made" to be shoulder-fired but also weapons "redesigned" and "remade" to be shoulder-fired, *id.*, expressly sweeping in weapons that were not rifles as originally manufactured but that have been redesigned or remade—such as by adding a brace or stock—to be rifles. *Cf. United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 513 n.6 (1992) (plurality op.) (pistol "ha[s] been 'made' into a rifle" for NFA purposes when packaged with carbine kit and rifle stock); *see also, e.g., United States v. Zeidman*, 444 F.2d 1051, 1053 (7th Cir. 1971); *United States v. Santoro*, 242 F. App'x 627, 630 (11th Cir. 2007) (per curiam) (similar). Indeed, it has long been true that a short-barreled rifle's stock may be detachable or sold separately, *see e.g.*, ATF, Rev. Rule 61-45, 1961-1 C.B.

7

663 (1961); ATF, Rev. Rule 61-203, 1961-2 C.B. 224 (1961), but whether the stock is attached before or after sale has never been held relevant to whether the finished product is a rifle.

Although plaintiffs (7-8) gesture at various support for their proposition that braced firearms are categorically excluded, none of those arguments could overcome the statutory text. In any event, none persuades. For example, plaintiffs claim that ATF's interpretation of subsection (a)(3) would render subsection (a)(4)—which regulates any "weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length," 26 U.S.C. § 5845(a)(4)—superfluous. That is incorrect. Subsection (a)(4) uniquely covers both (1) modified rifles where the barrel is longer than 16 inches but the overall length is less than 26 inches; and (2) a short-barreled weapon "made from a rifle," even if the weapon is no longer a rifle (say, because the stock has been removed).

Plaintiffs' suggestion (6-7) that the NFA intentionally excludes pistols is equally unpersuasive. For one, the NFA excludes some pistols only from its catch-all definition of "any other weapon," *see* 26 U.S.C. § 5845(e); the definitions at issue in this case make no mention of pistols. And plaintiffs' characterization of braced firearms as "pistols" begs the question; as the Rule explains, many such firearms are actually "rifles."

Finally, plaintiffs advance (7-8) a purposivist argument that the NFA's regulation of short-barreled rifles was intended to target modifications of rifles to

8

make them more dangerous but that braces modify pistols to make them less dangerous. That is incorrect. Congress regulated short-barreled rifles—rather than long-barreled rifles or handguns—because it was concerned with the unique combination of "their concealability" compared to long-barreled rifles and "their heightened ability to cause damage" compared to handguns. 88 Fed. Reg. at 6499. And "[i]ncreased concealability and accuracy, at least in the hands of killers, is not 'safe'—it is lethal." *Mock v. Garland*, 75 F.4th 563, 596 (5th Cir. 2023) (Higginson, J., dissenting).

**b.** Plaintiffs' additional contentions that the Rule violates the statute are incorrect.

First, plaintiffs' suggestion that the Rule improperly considers it irrelevant whether a braced firearm will be principally used as a rifle finds no support in the Rule itself. As explained, one of the factors identified by the Rule as relevant is "information demonstrating the likely use of the weapon by the general community," 88 Fed. Reg. at 6544; thus, if a specific braced firearm is not principally used as a shoulder-fired firearm, that would weigh in favor of its not being a rifle.

Moreover, to the extent plaintiffs suggest the Rule impermissibly declines to focus on whether a braced firearm's features facilitate one-handed firing (rather than focusing on if its features suggest a design to be shoulder-fired), that suggestion misunderstands the statute. Plaintiffs' argument rests on the incorrect premise— repeatedly rejected by courts—that a weapon may be a rifle only if it is designed "to

9

be fired exclusively from the shoulder." *United States v. Rose*, 695 F.2d 1356, 1357-58 (10th Cir. 1982) (collecting cases). Unlike other NFA definitions, the definition of "rifle" does not include any exclusive-intent requirement. Thus, if a braced firearm is designed to be shoulder-fired, it is a rifle even if it is also designed to be fired in other ways. Consistent with the statute, the Rule focuses on whether a firearm includes features indicative of a shoulder-firing design.

Switching gears, plaintiffs argue (10) that the Rule impermissibly considers as relevant evidence the activities of entities beyond the possessor—such as how the firearm will likely be used and the manufacturer's marketing materials. Not only is plaintiffs' argument inconsistent with their previous argument, but it is also unpersuasive. It is permissible to identify "factors [that] generally focus on the actual use of the item in the community" as relevant evidence of whether a product is "primarily intended" for a particular use. *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 519-20 (1994) (quotation omitted); *see also* 88 Fed. Reg. at 6544-48. And plaintiffs provide no basis for believing that a manufacturer's marketing materials— perhaps the most direct evidence of how a manufacturer intends its products to be used—are irrelevant.

**c.** Finally, plaintiffs fall back (10-13) on the rule of lenity, which they suggest requires construing the NFA in the narrowest possible way. But as the district court correctly concluded, R. Doc. 90, at 15, plaintiffs fail to identify any ambiguity in the relevant statutory language, which states that a weapon is a "rifle" if it is "designed"

10

and "intended" to be fired from the shoulder—much less the "grievous ambiguity or uncertainty" required to invoke lenity, *Maracich v. Spears*, 570 U.S. 48, 76 (2013) (quotation omitted).

Many statutes, including numerous criminal statutes, govern conduct based on a party's intent. Courts routinely apply those provisions, and plaintiffs point to no authority to support the remarkable proposition that an inquiry into intent is ambiguous and thus prohibited under the rule of lenity. The Rule articulates ATF's understanding of the best interpretation of that inquiry in this context, and the rule of lenity does not apply where, as here, the "traditional tools of statutory construction" support that reading. *Caron v. United States*, 524 U.S. 308, 316 (1998).

Plaintiffs' suggestion (12) that the rule of lenity applies because the agency changed its interpretation is equally misplaced. The Rule does not reflect an about-face by the agency. To the contrary, ATF has stated for years that certain firearms equipped with "braces" are short-barreled rifles. *See* 88 Fed. Reg. at 6487. Recognizing that ATF had been inconsistent across classifications, the Rule provides the public with additional guidance to ensure consistent application of the statute. In any event, it cannot be that an agency's having changed its legal position invalidates a correct interpretive rule; otherwise, any previous error would consign the agency to a state of perpetual error.

Appellate Case: 23-3230     Page: 13     Date Filed: 10/20/2023 Entry ID: 5328305

## B. Plaintiffs' Remaining Arguments Fail

Unable to show any error in the Rule's interpretation of the statute, plaintiffs next (13-20) advance a scattershot of arguments that particular features of the Rule, or ATF's slideshow explaining likely future classifications, are arbitrary and capricious. As explained, though, the Rule includes substantial explanations for its conclusion that ATF must not rely on claimed intent and for its determination that each identified factor may be probative of intent. *See* 88 Fed. Reg. at 6495-96, 6510-43. Those explanations demonstrate that the Rule is "reasonable and reasonably explained," *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021), especially given the "highly deferential standard of review," *Adventist Health Sys./SunBelt, Inc. v. HHS*, 17 F.4th 793, 803-04 (8th Cir. 2021).

**1.** As an initial matter, although plaintiffs repeatedly quote the Fifth Circuit's decision in *Mock*, 75 F.4th 563, to support their arguments, their attempt to leverage that decision is misplaced. As the district court here recognized, *Mock* is not correct even on the questions it addressed; to the contrary, Judge Higginson's dissent in that case "is more persuasive." R. Doc. 90, at 12. Regardless, many of the quotations on which plaintiffs rely are divorced from *Mock*'s holding, which was that the Rule is likely not a logical outgrowth of the proposed rule, 75 F.4th at 586. Plaintiffs do not contend that the Rule is invalid for that reason, and their attempt to repurpose stray quotations from *Mock* to support claims unaddressed by that decision fails to persuade.

Nor do plaintiffs' arguments taken on their own terms succeed: although plaintiffs complain that the holistic test embodied in the Rule does not explain how the factors will be weighed in any particular case, an agency is free to apply "multi-factor standards" to make "totality-of-the-circumstances" determinations. *PDK Labs. Inc. v. DEA*, 438 F.3d 1184, 1194 (D.C. Cir. 2006) (formatting altered); *see also, e.g.*, *FedEx Freight, Inc. v. NLRB*, 816 F.3d 515, 521-22 (8th Cir. 2016) (upholding similar multi-factor, unweighted test). And plaintiffs' complaint is particularly misplaced in this context, where the statute itself employs an intent standard that necessarily requires an assessment of all relevant evidence. Plaintiffs cite no support for the proposition that this method of assessing intent is categorically unlawful.

Plaintiffs' complaints about the individual factors enumerated in the Rule fare no better. For example, plaintiffs urge (15) that the Rule fails to identify "which of the 12,000 rifles" in ATF's database the agency will consider when determining whether a specific braced firearm has a weight, length, and length of pull "consistent with" rifles. But the Rule does so identify: For a weapon "marketed as a pistol that is a variant of a rifle," ATF will compare the braced firearm "against the original rifle design." 88 Fed. Reg. at 6518, 6535. And for a braced firearm that is not a rifle variant, ATF will compare against similar pistol variants designed to be fired from the shoulder (*e.g.*, a braced firearm made from a Glock-type pistol may be compared against "a Glock-type pistol with a shoulder stock"). *Id.*

13

And although plaintiffs suggest (16-17) that it is unreasonable to consider whether a braced firearm has similar characteristics to a similar-model rifle because sometimes physical similarities are irrelevant, that argument cannot succeed. The Rule explains at length why the specific characteristics that ATF has identified—the weight, length, and length of pull—are relevant to the statutory intent determination. *See* 88 Fed. Reg. at 6514-37.

Similarly, although plaintiffs complain (16) that ATF failed to provide "precise metrics" for these factors, plaintiffs do not provide any support for the idea that precise metrics—rather than a qualitative approach—are necessary in this context. *Cf. FedEx*, 816 F.3d at 521-22 (upholding similar qualitative test). Regardless, the Rule includes many pages of figures for specific rifle and pistol variants to use as comparisons. 88 Fed. Reg. at 6514-18, 6535-37.

Finally, plaintiffs incorrectly suggest (17) that the Rule "dismisses manufacturer training materials and examples of proper use" as irrelevant. As explained, the Rule considers relevant both a manufacturer's marketing materials and evidence of a braced firearm's likely use in the community. The Rule simply states that examples of how a braced firearm is used "in isolated circumstances or by a single individual," 88 Fed. Reg. at 6519, is not—unlike evidence of a manufacturer's materials or a product's widespread use—generally relevant.

**2.** Separately, plaintiffs erroneously suggest (18) that the Rule fails to consider "the costs and reliance interests" of individuals who purchased braces between 2020

14

and 2022. The Rule specifically discussed reliance interests, *see* 88 Fed. Reg. at 6507-08, and adopted compliance options tailored to ameliorate any burden on such interests, *see id.* at 6480-81. And although ATF did not quantify how many braces were sold between 2020 and 2022, the agency calculated costs using estimates of up to seven million braces in circulation—more than two times the estimated pre-2020 sales of three million braces—to "account for uncertainty." *See* ATF, *Final Regulatory Impact Analysis and Final Regulatory Flexibility Analysis* 18 (Jan. 2023), https://perma.cc/96PV-KRB9. Plaintiffs do not argue that these estimates were unreasonable—much less that they were so unreasonable to overcome the required "highly deferential" review. *Adventist Health*, 17 F.4th at 803-04.

Regardless, the Rule was adopted not because of economic considerations but instead to "inform the public of the best interpretation" of the statutory definition of "rifle." 88 Fed. Reg. at 6502; *cf. Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 223-24 (2016). Accordingly, any deficiencies in the economic analysis could not render the Rule arbitrary and capricious, and would be harmless in any event, because they are untethered from the decision to adopt the Rule. Plaintiffs' arguments thus provide no basis for relief.

**3.** Finally, plaintiffs briefly argue (14-15, 19-20) that the agency's slideshows containing pictures of braced firearms that ATF believes are likely short-barreled rifles are arbitrary and capricious because they are not explained. But the district court held

15

that these slideshows are not final agency action challengeable under the APA, *see* R. Doc. 90, at 21-22, and plaintiffs do not attempt to rebut that conclusion.

And the district court was correct. ATF released the slideshows to provide public notice of "representative" examples of how ATF "will apply the" statutory definition. *See* R. Doc. 1-6, at 2; R. Doc. 1-7, at 2. But the slideshows do not themselves reflect ATF's final reasoning with respect to any specific firearm, nor do they have any legal consequences. If ATF were to take future enforcement action against a manufacturer or owner of any braced firearm shown in a slideshow, the sole question would be whether the braced firearm is a rifle under the statute, with the slideshow receiving no weight in that determination. Thus, the slideshows are neither "the consummation of the agency's decisionmaking process" nor are they actions "from which legal consequences will flow," and they are not challengeable final agency action. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (quotation omitted).

Moreover, the error in plaintiffs' challenge is only underscored by the scope of their arguments. Although plaintiffs complain that the slideshows do not contain ATF's reasoning, they nowhere develop an argument that any of the pictured firearms are not actually short-barreled rifles. Therefore, the injunction they seek against the slideshows would be irrelevant; in all events—with or without the slideshows—the relevant question in any enforcement proceeding would simply be whether the braced firearm is a short-barreled rifle.

16

## II. Plaintiffs Have Not Established That the Equitable Factors Support an Injunction

Even setting aside the merits, plaintiffs have failed to justify an injunction. They have not demonstrated irreparable harm. Even if they had, their minimal asserted harms could not outweigh the ATF's, and the public's, countervailing interests. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (balance of the equities and public interest "merge" when the government is a party).

**1.** Plaintiffs have not demonstrated that they will suffer irreparable harm absent an injunction. To do so, plaintiffs must identify harm that is "certain and great and of such imminence that there is a clear and present need for equitable relief." *Morehouse Enters., LLC v. ATF*, 78 F.4th 1011, 1017 (8th Cir. 2023) (quotation omitted). The mere "possibility" of harm is not enough; plaintiffs "must prove that irreparable injury is likely in the absence of an injunction." *Id.* at 1017-18 (quotation omitted).

In attempting to make that showing, plaintiffs only develop arguments (20-22) with respect to SB Tactical—a brace manufacturer—and plaintiff States. The remaining plaintiffs thus have no claims of irreparable harm that could support an injunction running to them. And plaintiffs who do claim irreparable harm fail to demonstrate harm sufficient to support an injunction.

**a.** SB Tactical claims (20-21) it is suffering irreparable harm because it has experienced substantially reduced sales following the Rule. But SB Tactical does not aver that the Rule imposes any obligations or costs on it directly. Instead, SB Tactical

17

seems to suggest that its customers have reacted to the Rule by choosing to purchase fewer of its products. But to establish sufficient harm even in the standing context, a plaintiff must demonstrate that its injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (alterations and quotation omitted). Making that showing is particularly challenging when an injury "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Id.* at 562 (quotation omitted). Here, neither ATF nor the Court has any ability to control the independent decisions of SB Tactical's potential customers to purchase or not purchase particular products. Any financial harm from those parties' choices is not irreparable harm tied to the Rule.

Moreover, the Rule makes clear that certain brace designs may reflect a firearm that is not intended to be fired from the shoulder. For example, a braced weapon might not have "a surface area that allows shouldering"—as with "an elastic strap that wraps around the shooter's wrist." 88 Fed. Reg. at 6529-30. Or it might include "a feature intended specifically to prevent" shoulder firing, such as "a permanently attached protrusion." *Id.* at 6530. Thus, to the extent that SB Tactical has chosen not to manufacture such designs, any financial harm it has experienced from its customers' desire not to purchase short-barreled rifles is self-inflicted and not

18

irreparable. *Salt Lake Tribune Publ'g Co. v. AT&T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003).

Conversely, to the extent SB Tactical's allegations of harm rest on the proposition that its customers want to purchase stabilizing braces only (or principally) to circumvent the NFA, that suggestion underscores ATF's determination that many of these manufactured "braces" are in fact designed for shoulder firing. Plaintiffs can hardly claim cognizable injury from their newfound inability to facilitate circumvention of federal law.

And although plaintiffs briefly suggest (21) that SB Tactical (and perhaps the other manufacturer plaintiff) have suffered irreparable harm because the Rule "disparages" them and results in the loss of customer goodwill, plaintiffs do not further develop this argument beyond those "vague and speculative" assertions, *Morehouse*, 78 F.4th at 1017 n.5.

**b.** The States' claims of irreparable harm fare no better. The States note (21-22) that some of the NFA's requirements—though not its tax, *see* 26 U.S.C. § 5853— apply to short-barreled rifles owned by the States, and they assert that they may "incur compliance costs analyzing guns in their possession" to determine if they are subject to those requirements. But such "ordinary compliance costs are typically insufficient to constitute irreparable harm," *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005), and the States provide no evidence to quantify those costs or support a

19

conclusion that they are great and imminent burdens that justify equitable relief, *Morehouse*, 78 F.4th at 1017.

Nor does the States' contention (22) that they suffer harm because the Rule "strikes an irreparable blow to the States' citizens' safety" advance their case. Not only is that asserted harm too underdeveloped to support injunctive relief, the States cannot assert, "as *parens patriae*," such claims on behalf of their citizens "against the Federal Government," *Haaland v. Brackeen*, 143 S. Ct. 1609, 1640 (2023) (quotation omitted).

**2.** Even assuming plaintiffs had demonstrated some irreparable harm, their minimal asserted harms could not outweigh the countervailing public interest in public safety and in regulatory clarity.

First, the Rule benefits public safety. As explained, the NFA reflects Congress's determination that short-barreled rifles pose a substantial danger and that regulating them through registration and taxation requirements is necessary to ameliorate that danger. *See* 88 Fed. Reg. at 6566. The Rule reinforces these controls that Congress determined advance public safety.

Second, the Rule promotes the public interest in enforcement clarity and consistency. ATF promulgated the Rule largely to ameliorate confusion among regulated entities regarding the proper interpretation of the intent standard in the NFA and to ensure that ATF would consistently apply the definition. An injunction

would deprive the agency, and the regulated public, of that explanation and risk engendering future confusion and inconsistency.

In response, plaintiffs do not meaningfully contest these equities. Instead, they argue (22-23) the government's equities and the public interest should be discounted because the Rule is unlawful. But that argument rests on a fundamental misapplication of the relevant framework. To prevail, plaintiffs must demonstrate not only that they are "likely to succeed on the merits," but also that "the balance of equities tips in [their] favor" and "that an injunction is in the public interest." *Winter*, 555 U.S. at 20. If plaintiffs' reasoning were correct, the consideration of equitable factors would collapse into one inquiry: any plaintiff who could establish the merits would also establish the equitable factors. That is not the law. *See id.* at 31-33 (declining to "address the underlying merits" but holding plaintiffs had failed to meet the equitable factors); *see also Morehouse*, 78 F.4th 1011 (same).

**3.** Finally, even if plaintiffs had demonstrated an entitlement to relief pending appeal, they would not be entitled to a broad injunction. Fundamental constitutional and equitable principles require the Court to limit any injunction to specific plaintiffs whom the Court finds have demonstrated irreparable injury. *See Gill v. Whitford*, 138 S. Ct. 1916, 1929-30 (2018) (Article III); *Califano v. Yamazaki*, 442 U.S. 682, 702 (1979) (equity). As explained, that manifestly does not include any plaintiffs beyond SB Tactical and the States—the only plaintiffs to develop any arguments regarding

21

irreparable injury—nor does it include, with respect to the States, anything beyond the weapons the States themselves claim to possess.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' motion.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

MAC SCHNEIDER
*United States Attorney*

ABBY C. WRIGHT

*/s/ Sean R. Janda*

SEAN R. JANDA
BEN LEWIS
*Attorneys, Appellate Staff*
*Civil Division, Room 7260*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3388*

October 2023

22

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5191 words. This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Sean R. Janda*
SEAN R. JANDA

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2023, I electronically filed the foregoing

response with the Clerk of the Court for the United States Court of Appeals for the

Eighth Circuit by using the appellate CM/ECF system. Participants in the case are

registered CM/ECF users, and service will be accomplished by the appellate

CM/ECF system.

*/s/ Sean R. Janda*
SEAN R. JANDA