# In the United States Court of Appeals
## for the Eighth Circuit

FIREARMS REGULATORY ACCOUNTABILITY COALITION, INC., et al.,

*Plaintiffs-Appellants,*

v.

MERRICK B. GARLAND, in his official capacity as
Attorney General of the United States, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of North Dakota, Western Division
1:23-cv-24-DLH-CRH, Hon. Daniel L. Hovland

## BRIEF OF *AMICI CURIAE* MEMBERS OF CONGRESS IN SUPPORT OF APPELLANTS AND REVERSAL

Bryan Weir
Cameron T. Norris
Tiffany H. Bates
Consovoy McCarthy PLLC
1600 Wilson Boulevard
Suite 700
Arlington, VA 22209
(703) 243-9423

November 22, 2023          *Counsel for Amici Curiae*

# TABLE OF CONTENTS

Table of Authorities ..............................................................................................ii

Interest of *Amici Curiae* .....................................................................................1

Introduction and Summary of Argument ...........................................................2

    I.    ATF's Rule flouts the Second Amendment.......................................6

        A.    The individual right to keep and bear arms is fundamental to liberty and deeply rooted in our Nation's history and tradition. ..........6

        B.    The Rule burdens millions of Americans' rights by taxing and regulating firearms equipped with orthotic support devices. ...............9

    II.    Congress did not grant ATF authority to criminalize the exercise of Second Amendment rights. ..............................................................11

Conclusion.............................................................................................................18

Appellate Case: 23-3230    Page: 2    Date Filed: 11/27/2023 Entry ID: 5338427

# TABLE OF AUTHORITIES

**Cases**

*Bezet v. United States*,
276 F. Supp. 3d 576 (E.D. La. 2017) ........................................................................3

*Bowen v. Georgetown Univ. Hospital*,
488 U.S. 204 (1988) ........................................................................ 12

*Caetano v. Massachusetts*,
577 U.S. 411 (2016) ........................................................................8

*Cargill v. Garland*,
57 F.4th 447 (5th Cir. 2023) ........................................................14, 15, 16

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ........................................................................ 12

*City of Arlington v. FCC*,
569 U.S. 290 (2013) ........................................................................ 12

*Clinton v. City of New York*,
524 U.S. 417 (1998) ........................................................................ 11

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ................................................................ 1, 6, 7, 8, 9

*Ezell v. City of Chicago*,
846 F.3d 888 (7th Cir. 2017) ........................................................................8

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ........................................................................ 12

*Firearms Regul. Accountability Coal., Inc. v. Garland*,
No. 1:23-CV-024; 2023 WL 5942365 (D.N.D. Sept. 12, 2023) .......... 4, 8, 9, 12, 15

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
140 S. Ct. 789 (Gorsuch, J., statement respecting denial of certiorari) ................ 14

*Gun Owners of Am., Inc. v. Garland*,
19 F.4th 890 (2021) ........................................................................ 15

Appellate Case: 23-3230     Page: 3     Date Filed: 11/27/2023 Entry ID: 5338427

*Heller v. District of Columbia,*
 670 F.3d 1244 (D.C. Cir. 2011) ........................................................ 10, 11

*INS v. Chadha,*
 462 U.S. 919 (1983) ................................................................................. 11

*Konigsberg v. State Bar of Cal.,*
 366 U.S. 36 (1961) .................................................................................. 10

*Lomont v. O'Neill,*
 285 F.3d 9 (D.C. Cir. 2002) ...................................................................... 3

*McDonald v. City of Chicago,*
 561 U.S. 742 (2010) ............................................................................... 6, 8

*Moore v. Madigan,*
 702 F.3d 933 (7th Cir. 2012) ..................................................................... 7

*Mumad v. Garland,*
 11 F.4th 834 (8th Cir. 2021) ................................................................... 13

*Murdock v. Pennsylvania,*
 319 U.S. 105 (1943) ............................................................................... 10

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
 142 S. Ct. 2111 (2022) ............................................................ 1, 6, 7, 8, 10

*Rust v. Sullivan,*
 500 U.S. 173 (1991) ............................................................................... 17

*Sessions v. Dimaya,*
 138 S. Ct. 1204 (2018) ........................................................................... 13

*Thomas v. Collins,*
 323 U.S. 516 (1945) ............................................................................... 10

*U.S. ex rel. Attorney Gen. v. Del. & Hudson Co.,*
 213 U.S. 366 (1909) ............................................................................... 17

Appellate Case: 23-3230    Page: 4    Date Filed: 11/27/2023 Entry ID: 5338427

*Union Pacific R. Co. v. DHS*,
   738 F.3d 885 (8th Cir. 2013) ................................................................. 17, 18

*United States v. Apel*,
   571 U.S. 359 (2014) ............................................................................... 14

*United States v. Bass*,
   404 U.S. 336 (1971) ............................................................................... 13

*United States v. Buford*,
   54 F.4th 1066 (8th Cir. 2022) ................................................................ 15

*United States v. Davis*,
   139 S. Ct. 2319 (2019) ....................................................................... 13, 15

*United States v. Eaton*,
   144 U.S. 677 (1892) ............................................................................... 14

*United States v. George*,
   228 U.S. 14 (1913) ................................................................................. 15

*United States v. Hudson*,
   7 Cranch 32; 11 U.S. 32 (1812) ............................................................. 13

*Valenzuela Gallardo v. Barr*,
   968 F.3d 1053 (9th Cir. 2020) ............................................................... 13

## Constitutional Provisions

Article I
   § 1 ........................................................................................................ 11
   § 7 ........................................................................................................ 11

## Statutes

18 U.S. C. § 924 .......................................................................................... 4

26 U.S.C.
   § 5812 .................................................................................................... 4
   § 5871 .................................................................................................... 4

Appellate Case: 23-3230     Page: 5     Date Filed: 11/27/2023 Entry ID: 5338427

**Other Authorities**

Factoring Criteria for Firearms with Attached "Stabilizing Braces," 88 Fed. Reg. 6,478 (Jan. 31, 2023) .................................................................................3

*Handguns, Stabilizing Braces, and Related Components*, Congressional Research Service (Apr. 19, 2021) ...............................................................................8

Notice of Proposed Rulemaking, 86 Fed. Reg. 30,826 (June 10, 2021) ...........................3

President's Remarks on Gun Violence Prevention Efforts, 2021 Daily Comp. Pres. Doc. 298 (Apr. 8, 2021) ...................................................................... 16

*Products – Hunting/Shooting*, Be Adaptive Equipment Inc. .....................................9

Appellate Case: 23-3230     Page: 6     Date Filed: 11/27/2023 Entry ID: 5338427

## INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* (listed in the Appendix) are members of the United States Senate and House of Representatives who seek to uphold the rights of all Americans to keep and bear arms, especially veterans and disabled individuals who need assistance to exercise their rights. The Second Amendment is a fundamental protection of liberty that is deeply rooted in our Nation's history and tradition. It protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). And it guarantees "an 'individual right to possess and carry weapons in case of confrontation.'" *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2135 (2022) (quoting *Heller*, 554 U.S. at 592). But ATF has promulgated a rule that burdens this right by restricting the purchase of orthotic assistance devices known as pistol braces and requiring existing owners of pistol braces to register them with the federal government. And the district court has refused to enjoin it. The Rule is especially concerning for Americans with disabilities or otherwise lacking physical strength to comfortably fire pistols, including veterans. Importantly, the Second Amendment protects the rights of *all* law-abiding adult citizens—not just the strong and able-bodied.

ATF's Rule threatens that guarantee in a way that Congress never authorized. Article I of the Constitution vests all legislative power in Congress. Federal agencies

---

[1] Counsel for *amici curiae* certifies that this brief was not authored in whole or in part by counsel for any party and that no person or entity other than *amici curiae* or its counsel has made a monetary contribution to the preparation or submission of this brief. All parties have consented to the filing of this brief.

1

may exercise only that power that Congress has granted them. And Congress never granted ATF the authority to regulate pistol braces. It is for Congress—not ATF—to decide whether to regulate them. Thus, *amici* urge the Court to reverse the district court, grant Appellants' motion a preliminary injunction, and vacate the ATF Rule.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Appellant SB Tactical's co-founder is a Marine Corps and Army Veteran. *See* App. 425; R. Doc. 1-10, at ¶6. He developed pistol braces after he saw an employee at a shooting range criticize a combat veteran with a prosthetic limb for not having adequate control over his gun. *Id.* His goal was to help service-disabled veterans and others with limited mobility to more safely grip, stabilize, and fire their pistols. App. 425; R. Doc. 1-10, at ¶¶7, 10. To that end, the braces that SB Tactical created are orthotic devices that attach to the back of a pistol along with straps that secure the pistol to the person's forearm. App. 425; R. Doc. 1-10, at ¶9. Appellant Richard Cicero is a beneficiary of these braces. In August 2010, he lost his right arm and right leg in an IED explosion while serving in Afghanistan. *See* App. 444; R. Doc. 1-13 at ¶4. He also suffers from an injury to his left leg, traumatic brain injury, and loss of strength and dexterity in his left hand because of the explosion. *Id.* After his injuries, he worked with SB Tactical to establish recognized proper uses of pistol braces. App. 444; R. Doc. 1-13 at ¶7. And in his experience, many disabled and otherwise limited persons cannot use a firearm effectively without a pistol brace. App. 446; R. Doc. 1-13 at ¶15. Pistol

2

braces have helped scores of injured shooters overcome their disabilities and return to a fulfilling hobby that improves their quality of life. App. 447; R. Doc. 1-13 at ¶20.

ATF recognized the benefits of these braces for over a decade. Starting in 2012, ATF explained that attaching a stabilizing brace "would not alter the classification of a pistol" and that "such firearm *would not be* subject" to the National Firearms Act's (NFA) burdensome controls. *See Factoring Criteria for Firearms with Attached "Stabilizing Braces,"* 88 Fed. Reg. 6,478, 6,482-83 (Jan. 31, 2023) ("Rule") (emphasis added). ATF also explained that pistols with such braces would not be subject to the Gun Control Act's (GCA) burdensome regulations. *Id.* These conclusions aligned with both statutes' purposes. For example, Congress passed the NFA in 1934 when "the country struggled to control the violence wrought by 'gangsters, racketeers, and professional criminals.'" *Bezet v. United States*, 276 F. Supp. 3d 576, 611 (E.D. La. 2017). The law thus focused on their weapons of choice: "dangerous weapons and devices such as machine guns, sawedoff shotguns and silencers." *Lomont v. O'Neill*, 285 F.3d 9, 11 (D.C. Cir. 2002). Disabled veterans using arm braces to shoot pistols are far afield from the "gangsters" Congress was targeting. Over the next 10 years after ATF's decision, Americans purchased millions of pistols braces with the understanding that guns equipped with them were not subject to the NFA or the GCA. *See* 86 Fed. Reg. 30,826, 30,845 (June 10, 2021) (Notice of Proposed Rulemaking).

That all changed on January 31 when ATF issued the Rule. Now, according to ATF, over 99% of brace-equipped pistols are "short-barreled rifles" under the NFA or

"firearms" under the GCA that are subject to those statutes' burdensome regulatory requirements. *See* App. 189; R. Doc. 1-5 at 21. For example, an owner of an NFA "firearm" must provide ATF with his or her fingerprints, register in a federal database, and pay taxes. *See* 26 U.S.C. §§5812(a)(3), 5841(b), 5812(a)(2), 5822(b). Violating the NFA or the GCA is a felony punishable by up to 10 years in prison. 26 U.S.C. §5871; 18 U.S.C. §§924(a)(1)(B), (D), 3571(c)(3), 3559(a)(5). In addition, ATF itself estimates that the Rule will lead to the destruction or forfeiture of over 750,000 firearms. Pls.' Ex. B, at 56-57.

Despite serious constitutional and APA concerns, the district court declined to enjoin the Rule. It concluded that ATF "was in its authority to effectuate the Final Rule," and that the challengers were unlikely to succeed on the merits. *Firearms Regul. Accountability Coal., Inc. v. Garland*, No. 1:23-CV-024, 2023 WL 5942365, at *6 (D.N.D. Sept. 12, 2023). The court held that the NFA and GCA were ambiguous enough to allow ATF to rewrite the definition of "rifle," but not ambiguous enough to apply traditional principles of statutory construction to read narrowly provisions that criminalize conduct. *Id.* at *6-7. It held that the Rule was an "interpretive rule" that simply "provides guidance" for enforcers to "determine when a particular weapon with a stabilizing brace falls under the purview" of the NFA. *Id.* at *7-9. And it held that the Rule does not even "implicate the Second Amendment." *Id.* at *5.

That decision is wrong for several reasons. To start, the Rule not only implicates Second Amendment rights, it impinges on them. The Supreme Court has made clear

that the individual right to keep and bear arms is a fundamental right that Americans enjoy. And that right protects the possession and use of handguns in particular. The Second Amendment also protects those acts and equipment necessary to exercise the right. That means braced pistols fall within the Second Amendment's ambit and are protected. The Rule burdens the right to own and operate braced pistols—especially for the disabled, elderly, and those other Americans who need arm braces to effectively operate their pistols—because it imposes taxes for their possession and burdensome registration requirements subject to criminal penalties.

But Congress never granted ATF the authority to issue the Rule and regulate arm braces. The Constitution vests all legislative power in Congress, and it requires all new laws to be passed by Congress. That means the President has no authority to change a law unilaterally; any changes must go through bicameralism and presentment as outlined in Article I, §7 of the Constitution. While an agency may sometimes issue interpretations of ambiguous laws that Congress has passed, agencies have no such power when Congress has spoken directly on an issue. This is one such case. Congress included no ambiguity when it passed the NFA and the GCA that could be read to allow ATF to regulate arm braces.

Yet even if the statutes were ambiguous, the Founders' careful separation of powers and respect for Congress prohibit deferring to ATF's interpretation. First, *Chevron* deference does not apply because the Rule carries criminal penalties, and only Congress can define what conduct is criminal and what conduct is not. Second, and

5

related, ATF's authority should be construed narrowly because it is attempting to criminalize conduct. Where there is an ambiguity in a criminal statute, that ambiguity should be resolved in favor of those subjected to it. Third, even if some deference to ATF applied, the doctrine of constitutional avoidance trumps that deference because the Rule infringes Second Amendment rights. And courts must assume that Congress does not casually give federal agencies the power to push the limits of congressional authority. This Court should reverse the decision below, grant Appellants' motion for a preliminary injunction, and vacate the Rule.

## I. ATF's Rule flouts the Second Amendment.

### A. The individual right to keep and bear arms is fundamental to liberty and deeply rooted in our Nation's history and tradition.

The Second Amendment protects an individual right to keep and bear arms. *See Bruen*, 142 S. Ct. at 2156; *Heller*, 554 U.S. at 635. That right is "deeply rooted in this Nation's history and tradition" and is "fundamental … to our system of ordered liberty." *McDonald v. City of Chicago*, 561 U.S. 742, 768, 778 (2010) (cleaned up). The Founders understood that the Second Amendment "codified a right 'inherited from our English ancestors.'" *Heller*, 554 U.S. at 599. The Abolitionists of later generations celebrated the Second Amendment as a safeguard against "the fanatics of Slavery." *Id.* at 609 (quoting Charles Sumner on the Senate floor). And Americans today depend on the Second Amendment's promise of "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635.

6

As *Heller* recognized, many Americans consider pistols to be the "quintessential self-defense weapon." 554 U.S. at 629. Pistols have several advantages over other firearms for self-defense. They "can be pointed at a burglar with one hand while the other hand dials the police," and they "cannot easily be redirected or wrestled away by an attacker." *Id.* Pistols are also indispensable for individuals "without the upper-body strength to lift and aim a long gun," such as a rifle or shotgun. *Id.* In part because of these benefits, *Heller* held that the Second Amendment protects the right to use a pistol for self-defense in the home. *See id.* at 635. Then in *Bruen*, the Court confirmed that this right does not stop at Americans' doorsteps, for "[m]any Americans hazard greater danger outside the home than in it." 142 S. Ct. at 2135 (citing *Moore v. Madigan*, 702 F.3d 933, 937 (7th Cir. 2012) ("[A] Chicagoan is a good deal more likely to be attacked on a sidewalk in a rough neighborhood than in his apartment on the 35th floor of the Park Tower")).

But not everyone can use a pistol safely and effectively straight out of the box. Firing a pistol is a physical act, and many citizens lack the dexterity to hold a pistol on target while pulling the trigger. Others lack the hand and wrist strength to absorb a pistol's recoil after firing a shot. For them, equipping their pistol with a support brace is essential to its use. And without one, the Second Amendment is toothless for many individuals, including people with disabilities and seniors. That is why the "individual right of armed defense—as recognized in *Heller* and incorporated against the states in *McDonald*—includes a corresponding right to acquire and maintain proficiency in

7

firearm use." *Ezell v. City of Chicago*, 846 F.3d 888, 892 (7th Cir. 2017). The "right to possess firearms for protection wouldn't mean much without the training and practice that make it effective." *Id.* (cleaned up). It should thus be beyond dispute that "the Second Amendment's plain text covers" the use of pistol braces by many law-abiding citizens. *See Bruen*, 142 S. Ct. at 2132, 2129-30.

Despite all this, the district court held that the regulation of "firearm accessories or attachments do not … implicate the Second Amendment." 2023 WL at *5. But the Second Amendment protects "modern instruments that facilitate armed self-defense" that are "in common use today." *Bruen*, 142 S. Ct. at 2132; *id.* at 2143. Pistols with support braces readily meet those criteria. Millions of Americans rely on support braces to use their pistols safely and accurately for self-defense. ATF itself estimates that between 3 and 7 million pistol braces are in circulation in the United States. 86 Fed. Reg. at 30,845. The Congressional Research Service puts that number even higher, at between 10 and 40 million. *See Handguns, Stabilizing Braces, and Related Components*, Congressional Research Service (Apr. 19, 2021), https://bit.ly/3jYkY5o. As these numbers show, pistol braces are far more popular than other modern self-defense instruments that the Second Amendment undoubtedly protects. *See, e.g., Caetano v. Massachusetts*, 577 U.S. 411 (2016) (stun guns); *see also id.* at 420 (Alito, J., concurring) ("'approximately 200,000 civilians owned stun guns' as of 2009"). And millions of law-abiding citizens prefer to equip their pistols with support braces or consider them essential for proper use of that weapon. *See McDonald*, 561 U.S. at 767-68; *Heller*, 554

8

U.S. at 628-29 ("[B]anning from the home the most preferred firearm in the nation to keep and use for protection of one's home and family would fail constitutional muster" (cleaned up)). The Second Amendment thus protects the right to own pistol braces.

Neither ATF nor the district court can sidestep those protections simply by declaring pistol braces to be "dangerous and unusual weapons." 88 Fed. Reg. at 6,548. Attaching a support brace does not convert pistols into unprotected "'gangster-type' weapons" any more than attaching a rifle mount to a wheelchair turns that assistive device into a tank. *See id.* at 6,566.[2] In fact, the ATF could identify only *two times when* pistol braces may have been used in an illegal shooting. *Id.* at 6,499. Those isolated events do not nullify the Second Amendment rights of millions of Americans who use pistol braces lawfully. Nor can ATF evade Second Amendment scrutiny just because its rule restricts pistol braces without banning them. *See Heller*, 554 U.S. at 630 (explaining that allowing possession of firearms but requiring them to be inoperable was unconstitutional).

**B.     The Rule burdens millions of Americans' rights by taxing and regulating firearms equipped with orthotic support devices.**

Not only does ATF's Rule implicate the Second Amendment, but it burdens those rights in multiple ways. The district court thought it "important" that the Rule "does not ban stabilizing braces or firearms equipped with them." 2023 WL at *5. True,

---

[2] Products that help individuals in wheelchairs use firearms are widely available. *See, e.g., Products – Hunting/Shooting*, Be Adaptive Equipment Inc., bit.ly/3IrmOoP.

9

it does not "ban" these arm braces. But it subjects them to taxation and registration requirements that carry serious criminal penalties for violations. To impose such restrictions after *Bruen*, the government must show that they are "consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, 142 S. Ct. at 2129-30 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)). But ATF made no attempt in its rulemaking to comply with that command. And such restrictions clearly would not pass muster if applied to other constitutional rights. *See*, *e.g., Thomas v. Collins*, 323 U.S. 516, 540 (1945) ("[A] requirement that one must register before he undertakes to make a public speech to enlist support for a lawful movement is quite incompatible with the requirements of the First Amendment."); *Murdock v. Pennsylvania*, 319 U.S. 105 (1943) (invalidating tax on solicitation as applied to dissemination of religious ideas). Yet despite the Supreme Court's instruction that the Second Amendment is "not a second-class right" subject to "an entirely different body of rules than the other Bill of Rights guarantees," *Bruen*, 142 S. Ct. at 2156 (cleaned up), the Rule tries to make it so.

The Rule's registration requirement for arm braces is particularly troublesome. Such requirements are ahistorical and unconstitutional; they are little more than "half-a-loaf measures aimed at deterring gun ownership." *See Heller v. District of Columbia*, 670 F.3d 1244, 1291 (D.C. Cir. 2011) (Kavanaugh, J., dissenting). Requiring gun owners to register weapons in common use (versus gun sellers) has no historical pedigree. *See id.*

Appellate Case: 23-3230     Page: 16     Date Filed: 11/27/2023 Entry ID: 5338427

at 1254 (majority op.) (citing only examples of registry requirements of gun sellers); *id.* at 1292 (Kavanaugh, J., dissenting). As then-judge Kavanaugh explained, "the vast majority of states have not traditionally required registration of lawfully possessed guns. … There certainly is no tradition in the United States of gun registration imposed on all guns." *Id.* Registration cannot be justified by the need to protect law enforcement, as "police officers obviously will assume the occupants might be armed regardless of what some central registration list might say." *Id.* at 1295. Nor can they be justified by the need to ensure gun owners are probably trained. *See id.* at 1291 (explaining that registration law "do not meaningfully serve the purpose of ensuring that owners know how to operate guns safely in the way certain licensing requirements can.").

## II. Congress did not grant ATF authority to criminalize the exercise of Second Amendment rights.

The Constitution establishes a system that separates federal power among the government's three branches. Article I dictates that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." U.S. Const. art. I, §1. It provides that laws can be made pursuant only to "a single, finely wrought and exhaustively considered, procedure," *INS v. Chadha*, 462 U.S. 919, 951 (1983), that includes bicameralism and presentment, *see* U.S. Const. art. I §7. The President thus cannot change or "effect the repeal of laws, for his own policy reasons, without observing the procedures set out in Article I, §7." *Clinton v. City of New York*, 524 U.S. 417, 445 (1998).

11

Federal agencies are in the Executive Branch and thus subject to the same restrictions. And they can exercise only that power that Congress has given them. *See, e.g., Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power … is limited to the authority delegated by Congress."). To be sure, the Supreme Court has allowed federal agencies some deference when they interpret an ambiguous statute that Congress passed. But courts do so on the assumption that the ambiguity itself is "an implicit delegation from Congress to the agency to fill in the statutory gaps." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000).

The court below appears to have concluded that the NFA and GCA are at least somewhat ambiguous. *See* 2023 WL at *6. ("[T]he ATF has the authority to interpret the NFA and GCA where there is ambiguity, meaning that it is not likely the Plaintiffs will succeed on this claim."). And it justified ATF's rewrite of the term "rifle" as simply agency "guidance" for determining "when a particular weapon with a stabilizing brace falls under the purview" of the NFA and GCA. *Id.* at *7. As Appellants explain, however, the NFA and GCA are not ambiguous, and they do not cover arm braces. *See* Appellants' Opening Br. at 30. There thus has been no delegation to ATF. "If the intent of Congress is clear, that is the end of the matter; … the agency[] must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). "Congress knows to speak … in capacious terms when it wishes to enlarge[] agency discretion." *City of Arlington v. FCC*, 569 U.S.

12

290, 296 (2013). Congress did not do so with the NFA and GCA, so it is up to Congress to decide whether to amend these statutes to cover arm braces.

But even if the NFA and GCA were ambiguous, the Constitution's vesting of legislative power in Congress commands that ATF's interpretation should receive no deference for three reasons.

**First,** ATF is not entitled to *Chevron* deference where, as here, it purports to interpret a statute with criminal penalties. "Deferring to [an agency's] construction of a statute with criminal applications raises serious constitutional concerns." *Valenzuela Gallardo v. Barr*, 968 F.3d 1053, 1059 (9th Cir. 2020). Specifically, "permitting executive officials to define the scope of criminal law … offend[s] the doctrine of separation of powers." *Id.* Under our Constitution, the separation of powers "requir[es] that Congress … define what conduct is sanctionable and what is not." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (plurality op.). The Supreme Court has long recognized that "[o]nly the people's elected representatives in the legislature are authorized to 'make an act a crime.'" *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019) (quoting *United States v. Hudson*, 7 Cranch 32, 34, 11 U.S. 32 (1812)); *see also Mumad v. Garland*, 11 F.4th 834, 838 (8th Cir. 2021) ("only elected representatives can criminalize conduct").

Congress must also speak "plainly and unmistakably" when it seeks to attach criminal penalties to certain conduct. *United States v. Bass*, 404 U.S. 336, 348 (1971) (cleaned up). It may not simply "hand off" its "responsibility for defining criminal behavior to unelected" bureaucrats. *Davis*, 139 S. Ct. at 2323. And agencies, in turn, may

not issue regulations that define new crimes without a clear statement from Congress. Instead, Congress must act "distinctly"—*i.e.*, clearly—when it authorizes an agency to define the contours of a crime. *United States v. Eaton*, 144 U.S. 677, 688 (1892). Without such "distinct[]" statutory authorization, "[i]t would be a very dangerous principle to hold that" violating a regulation "become[s] a criminal offense." *Id.*

*Chevron* deference for criminal statutes is incompatible with these principles. "[T]he primary reason for *Chevron* is that it allows the executive branch to make policy decisions through the accrued expertise of administrative agencies." *Cargill v. Garland*, 57 F.4th 447, 466 (5th Cir. 2023) (en banc). "But in exchange, *Chevron* deference shifts the responsibility for lawmaking from the Congress to the Executive, at least in part." *Id.* "That tradeoff cannot be justified for criminal statutes, in which the public's entitlement to clarity in the law is at its highest." *Id.* For its part, the Supreme Court has "never held that the Government's reading of a criminal statute is entitled to any deference." *United States v. Apel*, 571 U.S. 359, 369 (2014). And all evidence is that it would never do so. *See, e.g.*, *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 140 S. Ct. 789, 790 (Gorsuch, J., statement respecting denial of certiorari) ("Whatever else one thinks about *Chevron*, it has no role to play when liberty is at stake.").

In short, "*Chevron* does not apply here because the statutory language at issue implicates criminal penalties." *Cargill*, 57 F.4th at 468. When the Rule takes effect, individuals who merely possess braced firearms will face 10 years in prison unless they dismantle them or satisfy the Rule's burdensome reporting and taxing requirements.

No congressional statute authorizes such a rule, and ATF's generic grants of authority to issue "rules and regulations" to implement the GCA or the NFA do not come close to providing a "clear legislative basis," *United States v. George*, 228 U.S. 14, 22 (1913), to "make [possessing this type of firearm] a crime," *Davis*, 139 S. Ct. at 2325. Deferring to ATF would thus "wrongly allow a federal agency to create a regulatory crime without an express delegation of criminal policymaking power from Congress." *Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890, 916 (2021) (Murphy, J., dissenting). Deferring to ATF's interpretation would shift substantial power from Congress to an administrative agency and disrupt the Constitution's careful allocation of power among the three branches.

**Second,** ATF's authority should be construed narrowly because it criminalizes the exercise of a constitutional right. This Court has explained that, when there is a "grievous ambiguity or uncertainty" in a criminal statute, that ambiguity "should be resolved in favor of the defendant." *United States v. Buford*, 54 F.4th 1066, 1068 (8th Cir. 2022); *see also Cargill*, 57 F.4th at 469-71. Yet the district court declined to apply this rule to ATF when it interpreted the NFA and GCA to criminalize the conduct here. Despite seemingly concluding that these statutes are ambiguous to allow ATF to "clarify the meaning of statutory terms that Congress did not fully define," it concluded that no "genuine ambiguity" exists to justify applying this traditional rule of statutory interpretation. *Firearms Regul. Accountability Coal., Inc.*, 2023 WL at *6. But the NFA and GCA are—at best—"grievously" ambiguous. *See* Pls.' Mot. Prelim. Inj., at 18-21. The

Court should thus read the statutes "in favor of the defendants subjected to them." *Cargill*, 57 F.4th at 478 (cleaned up). Here, that means the Court should read the statutes in favor of those who rely on braced pistols to exercise their Second Amendment rights, including disabled and elderly Americans. And that reading, too, makes the Rule invalid. *See* Pls.' Mot. Prelim. Inj., at 18-21.

The reasons for applying this rule here are strong: It "*preserves* the separation of powers 'by maintaining the legislature as the creator of crimes'" rather than ATF itself. *Cargill*, 57 F.4th at 470. "If ATF could change the scope of criminal liability by issuing a regulation—free from the taxing obligations of bicameralism and presentment—the Executive could wield power that our Constitution reserves to the Legislature." *Id.*

And there's no question that an executive usurpation is happening here. The Rule's genesis was a speech President Biden gave on April 8, 2021, concerning gun-control measures he wanted to take. In that speech, the President admitted openly that he "asked the Attorney General and his team to identify for me immediate, concrete actions I could take now without having to go through the Congress." *President's Remarks on Gun Violence Prevention Efforts*, 2021 Daily Comp. Pres. Doc. 298, at 3 (Apr. 8, 2021), bit.ly/3Ywtt6D. He revealed that "[w]hether Congress acts or not, I'm going to use all the resources at my disposal as President" to implement his agenda. *Id.* at 4. And one of the uniteral measures he identified was "to treat pistols modified with stabilizing braces … [as] subject to the National Firearms Act." *Id.* at 3. Interpreting the NFA and GCA narrowly because they impose criminal penalties corrects this encroachment on

16

Congress's powers. And it is particularly important that the Executive Branch not be allowed to exercise legislative powers where, as here, it has tried to criminalize the exercise of rights enshrined in the Constitution.

**Third,** even if ATF were entitled to *Chevron* deference, the doctrine of constitutional avoidance nullifies that deference here. That doctrine provides that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other which such questions are avoided, [the Court's] duty is to adopt the latter." *Union Pacific R. Co. v. DHS*, 738 F.3d 885, 893-94 (8th Cir. 2013) (quoting *U.S. ex rel. Attorney Gen. v. Del. & Hudson Co.,* 213 U.S. 366, 408 (1909)). Courts "adhere to this principle of constitutional avoidance 'out of respect for Congress, which we assume legislates in the light of constitutional limitations.'" *Id.* (quoting *Rust v. Sullivan*, 500 U.S. 173, 191 (1991)).

This rule applies with particular vigor to administrative agencies. "Constitutional avoidance trumps even *Chevron* deference, and easily outweighs any lesser form of deference [courts] might ordinarily afford an administrative agency." *Id.* Courts "assume that Congress does not casually authorize administrative agencies to interpret a statute to push the limit of congressional authority." *Id.* (cleaned up). "Without the 'clearest indication' that Congress intended to enact a constitutionally suspect statute, [courts] follow 'the traditional rule' and 'independently inquire whether there is another interpretation, not raising serious constitutional concerns, that may fairly be ascribed to the statute." *Id.* (cleaned up).

Constitutional avoidance renders ATF's interpretation unlawful. As already explained, *see supra* I, the Rule's interpretation of the NFA and GCA impinges on Second Amendment rights, rendering that interpretation a "grave and doubtful constitutional question[]." *Id.* at 892. But the Court can avoid that question because there is another way to read those statutes: as not encompassing braced pistols at all. *See* Pls.' Mot. Prelim. Inj., at 8-18. As a result, it is the Court's "duty … to adopt" that interpretation. *Union Pacific*, 738 F.3d at 893.

## CONCLUSION

For these reasons, *amici curiae* respectfully ask the Court to reverse the district court, grant Appellants' motion for a preliminary injunction, and vacate the Arm Brace Rule.

Dated: November 22, 2023

Respectfully Submitted,

s/ *Bryan Weir*
Bryan Weir
Cameron T. Norris
Tiffany H. Bates
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard
Suite 700
Arlington, VA 22209
(703) 243-9434
bryan@consovoymccarthy.com

*Attorneys for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 29(a)(5) because it contains 4,744 words, excluding the parts exempted by Rule 32(f). This brief also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced face using Microsoft Word in 14-point Garamond font.

The electronic version of the brief has been scanned for viruses and is virus-free.

/s/ Bryan Weir
Bryan Weir
Cameron T. Norris
Tiffany H. Bates
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard
Suite 700
Arlington, VA 22209
(703) 243-9423

November 22, 2023                    *Attorneys for Amici Curiae*

## CERTIFICATE OF SERVICE

I certify that on November 22, 2023, I filed this document through the CM/ECF system, thereby serving all counsel of record.

/s/ Bryan Weir
Bryan Weir
Cameron T. Norris
Tiffany H. Bates
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard
Suite 700
Arlington, VA 22209
(703) 243-9423

*Attorneys for Amici Curiae*

Appellate Case: 23-3230     Page: 25     Date Filed: 11/27/2023 Entry ID: 5338427

# APPENDIX

## *U.S. Senate*

Kevin Cramer (ND)

| | |
|---|---|
| Marsha Blackburn (TN) | Cindy Hyde-Smith (MS) |
| John Barrasso (WY) | James Lankford (NE) |
| Ted Budd (NC) | Cynthia Lummis (WY) |
| Bill Cassidy, M.D. (LA) | Roger Marshall (KS) |
| Tom Cotton (AR) | Mitch McConnell (KY) |
| Steve Daines (MT) | Rick Scott (FL) |
| Joni Ernst (IA) | Dan Sullivan (AK) |
| Deb Fischer (NE) | Thom Tillis (NC) |
| John Hoeven (ND) | Tommy Tuberville (AL) |

## *U.S. House of Representatives*

| | |
|---|---|
| Robert B. Aderholt (AL) | Ron Estes (KS) |
| Mark Amodei (NV) | Drew Ferguson (GA) |
| Andy Barr (KY) | Michelle Fischbach (MN) |
| Aaron Bean (FL) | Chuck Fleishmann (TN) |
| Cliff Bentz (OR) | Virginia Foxx (NC) |
| Dan Bishop (NC) | Russell Fry (SC) |
| Michael Burgess (TX) | Russ Fulcher (ID) |
| Buddy Carter (GA) | Paul A. Gosar, D.D.S. (AZ) |
| Andrew Clyde (GA) | Glenn Grothman (WI) |
| Tom Cole (OK) | Harriet M. Hageman (WY) |
| Mike Collins (GA) | Diana Harshbarger (TN) |
| Warren Davidson (OH) | Ashley Hinson (IA) |
| Scott DesJarlais, M.D. (TN) | Richard Hudson (NC) |
| Byron Donalds (FL) | Mike Kelly (PA) |
| Jeff Duncan (SC) | Doug LaMalfa (CA) |
| Chuck Edwards (NC) | Nick Langworthy (NY) |

Appellate Case: 23-3230    Page: 26    Date Filed: 11/27/2023 Entry ID: 5338427

Debbie Lesko (AZ)

Thomas Massie (KY)

Mary Miller (IL)

Alex Mooney (WV)

Ralph Norman (SC)

Andy Ogles (TN)

Burgess Owens (UT)

Guy Reschenthaler (PA)

John Rose (TN)

Adrian Smith (NE)

Jason Smitch (MO)

Elise Stefanik (NY)

Greg Steube (FL)

Claudia Tenney (NY)

Glenn "GT" Thompson (PA)

Tim Walberg (MI)

Joe Wilson (SC)

Rudy Yakym III (IN)

Appellate Case: 23-3230   Page: 27   Date Filed: 11/27/2023 Entry ID: 5338427