# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

FIREARMS REGULATORY ACCOUNTABILITY COALITION, INC.,
STATES OF WEST VIRGINIA, NORTH DAKOTA, *et al.*,

*Plaintiffs-Appellants,*

v.

MERRICK B. GARLAND, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of North Dakota
The Honorable District Court Judge Daniel L. Hovland
Case No. 1:23-cv-0024-DLH-CRH

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

PATRICK MORRISEY
Attorney General
LINDSAY SEE
Solicitor General
MICHAEL R. WILLIAMS
Principal Deputy Solicitor General
Office of the West Virginia Attorney
General
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
(681) 313-4550
Lindsay.S.See@wvago.gov
Michael.R.Williams@wvago.gov

Stephen J. Obermeier
Thomas M. Johnson, Jr.
Michael D. Faucette
Jeremy J. Broggi
Boyd Garriott
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Tel: 202.719.7000
Fax: 202.719.7049
SObermeier@wiley.law

*Additional counsel on signature page*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................i

TABLE OF AUTHORITIES ..................................................... ii

INTRODUCTION ....................................................................1

ARGUMENT ............................................................................2

    I.     ATF Confirms The District Court Wrongly Rejected Appellants' Likely Success On The Merits. ..............................................2

         A.    ATF's Actions Are Reviewable...................................2

         B.    ATF Confirms The Rule Violates The Statutes.........................5

         C.    ATF Confirms The Rule Is Arbitrary. .....................................17

         D.    ATF Confirms The Adjudications Are Arbitrary. ....................24

    II.    ATF Confirms The Remaining Factors Favor Preliminary Relief. ....25

         A.    ATF Confirms Appellants' Irreparable Harm. .........................25

         B.    ATF Confirms The Balance Of Harms And Public Interest Favor Preliminary Relief..........................................................28

CONCLUSION ......................................................................29

Appellate Case: 23-3230    Page: 2    Date Filed: 01/09/2024 Entry ID: 5351789

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Laboratories v. Gardner*,
    387 U.S. 136 (1967)........................................................................18

*ANR Storage Co. v. FERC*,
    904 F.3d 1020 (D.C. Cir. 2018)....................................................19

*Bell Atlantic Telephone Companies v. FCC*,
    24 F.3d 1441 (D.C. Cir. 1994)......................................................17

*Biden v. Nebraska*,
    143 S. Ct. 2355 (2023)....................................................................9

*Bittner v. United States*,
    598 U.S. 85 (2023)........................................................................16

*Califano v. Yamasaki*,
    442 U.S. 682 (1979)......................................................................28

*Cargill v. Garland*,
    57 F.4th 447 (5th Cir. 2023) ...............................................1, 14, 16

*CIC Services, LLC v. IRS*,
    593 U.S. 209 (2021)........................................................................5

*Department of Commerce v. New York*,
    139 S. Ct. 2551 (2019)..................................................................25

*DHS v. Regents of the University of California*,
    140 S. Ct. 1891 (2020)............................................................19, 24

*End Citizens United PAC v. FEC*,
    69 F.4th 916 (D.C. Cir. 2023)......................................................24

*Gonzales v. Oregon*,
    546 U.S. 243 (2006)........................................................................3

ii

*Hardin v. ATF,*
  65 F.4th 895 (6th Cir. 2023) ................................................................1, 14, 15, 16

*Hawkes Co. v. U.S. Army Corps of Engineers,*
  782 F.3d 994 (8th Cir. 2015) ...........................................................................2, 3, 4

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
  455 U.S. 489 (1982) .............................................................................................1, 9

*Innovator Enterprises, Inc. v. Jones,*
  28 F. Supp. 3d 14 (D.D.C. 2014) ....................................................................17, 21

*Iowa Utilities Board v. FCC,*
  109 F.3d 418 (8th Cir. 1996) ...................................................................................25

*Koehler v. Brody,*
  483 F.3d 590 (8th Cir. 2007) .....................................................................................5

*Kroupa v. Nielsen,*
  731 F.3d 813 (8th Cir. 2013) ...................................................................................26

*Lopez-Chavez v. Garland,*
  991 F.3d 960 (8th Cir. 2021) .....................................................................................7

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ..................................................................................................25

*Marcum v. Salazar,*
  694 F.3d 123 (D.C. Cir. 2012) ..............................................................................3, 4

*Medicine Shoppe International, Inc. v. S.B.S. Pill Dr., Inc.,*
  336 F.3d 801 (8th Cir. 2003) ...................................................................................27

*Michigan v. EPA,*
  576 U.S. 743 (2015) ..................................................................................................23

*Mock v. Garland,*
  75 F.4th 563 (5th Cir. 2023) ............................................................................*passim*

*Mock v. Garland,*
  2023 WL 6457920 (N.D. Tex. Oct. 2, 2023) ...........................................................25

iii

*National Association of Home Builders v. EPA*,
682 F.3d 1032 (D.C. Cir. 2012) ..........................................................23

*Nebraska v. Biden*,
52 F.4th 1044 (8th Cir. 2022) .............................................................28

*Oklahoma Department of Environmental Quality v. EPA*,
740 F.3d 185 (D.C. Cir. 2014) ............................................................26

*POET Biorefining, LLC v. EPA*,
970 F.3d 392 (D.C. Cir. 2020) ..............................................................3

*Polymer80, Inc. v. Garland*,
2023 WL 3605430 (N.D. Tex. Mar. 19, 2023) ....................................26

*Posters 'N' Things, Ltd. v. United States*,
511 U.S. 513 (1994) .............................................................................12

*R.J. Reynolds Vapor Co. v. FDA*,
65 F.4th 182 (5th Cir. 2023) ...............................................................26

*Restaurant Law Center v. United States Department of Labor*,
66 F.4th 593 (5th Cir. 2023) ...............................................................27

*Ridenour v. Boehringer Ingelheim Pharmaceuticals, Inc.*,
679 F.3d 1062 (8th Cir. 2012) ..............................................................4

*Sig Sauer, Inc. v. Brandon*,
826 F.3d 598 (1st Cir. 2016) .............................................................4, 5

*Spirit Airlines, Inc. v. FAA*,
997 F.3d 1247 (D.C. Cir. 2021) ..........................................................19

*Tripoli Rocketry Association, Inc. v. ATF*,
437 F.3d 75 (D.C. Cir. 2006) .....................................................1, 18, 20

*Union Pacific Railroad Co. v. DHS*,
738 F.3d 885 (8th Cir. 2013) ..............................................................17

*United States v. Anderson*,
885 F.2d 1248 (5th Cir. 1989) ..............................................................6

iv

*United States v. Bundy*,
   2013 WL 3463610 (D. Nev. July 9, 2013) .........................................................27

*United States v. Thompson/Center Arms Co.*,
   504 U.S. 505 (1992).......................................................................8, 9, 11, 16

*VanDerStok v. Garland*,
   86 F.4th 179 (5th Cir. 2023) ...................................................................19, 21, 25

*Window Covering Manufacturers Association v. CSPC*,
   82 F.4th 1273 (D.C. Cir. 2023) .........................................................................23

**Statutes**

26 U.S.C. § 5845 ...........................................................................................*passim*

**Regulatory Materials**

Factoring Criteria for Firearms with Attached "Stabilizing Braces,"
   Final Rule, 88 Fed. Reg. 6,478 (Jan. 31, 2023) ..........................................*passim*

Factoring Criteria for Firearms with Attached "Stabilizing Braces,"
   Notice of Proposed Rulemaking, 86 Fed. Reg. 30,826 (June 10,
   2021). ...................................................................................................11, 15

**Other Authorities**

United States Br., *United States v. Miller*, 307 U.S. 174 (1939),
   1939 WL 48353 .................................................................................................6

United States Br., *Johnson v. United States*, 576 U.S. 591 (2015),
   2014 WL 4073207 .............................................................................................6

Appellate Case: 23-3230     Page: 6     Date Filed: 01/09/2024 Entry ID: 5351789

**INTRODUCTION**

ATF does not seriously dispute that the Rule effects a seismic shift in the federal regulation of pistol stabilizing braces. Nor could it. For more than a decade, ATF held the most popular braced pistols free from enhanced regulation under the National Firearms Act ("NFA") and Gun Control Act ("GCA"). Now, the Rule does the opposite, subjecting millions of law-abiding Americans to criminal penalties, eliminating 750,000 firearms, costing private parties $5 billion, and shuttering four-of-five brace manufacturers.

Nevertheless, ATF continues to defend the Rule on the specious ground that the NFA and GCA have always covered 99% of braced pistols. But the agency refuses to engage the Fifth Circuit's determination that this Rule "violates the [Administrative Procedure Act]," *Mock v. Garland*, 75 F.4th 563, 578 (5th Cir. 2023), and the Supreme Court's teaching that multiple-use items must be evaluated by their principal use, *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982). The agency ignores decisions from the Fifth, Sixth, and D.C. Circuits invalidating other ATF flip-flops, *Hardin v. ATF*, 65 F.4th 895 (6th Cir. 2023); *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023) (en banc), *cert. granted*, No. 22-976 (U.S. Nov. 3, 2023), and failures to specify classification criteria, *Tripoli Rocketry Ass'n, Inc. v. ATF*, 437 F.3d 75 (D.C. Cir. 2006), never citing them in its

1

brief. That ATF still has nothing to say about these foundational problems with the Rule confirms it should be enjoined.

ARGUMENT

## I. ATF CONFIRMS THE DISTRICT COURT WRONGLY REJECTED APPELLANTS' LIKELY SUCCESS ON THE MERITS.

### A. ATF's Actions Are Reviewable.

For the first time in this litigation, ATF asserts that the Rule is "not final agency action challengeable under the APA." Gov. Br. 21. Although the agency concedes the Rule is "the consummation" of its "decisionmaking process," it wrongly contends the Rule "does not itself determine any legal rights or impose any legal obligations." Gov. Br. 21.

The Rule does both. First, the Rule "purport[s] to give an authoritative interpretation of a statutory provision" to bind private conduct. *Hawkes Co. v. U.S. Army Corps of Eng'rs*, 782 F.3d 994, 1000 (8th Cir. 2015) (citation omitted), *aff'd*, 578 U.S. 590 (2016). It instructs that anyone possessing an NFA "firearm" under the new interpretation must perform one of five options "to avoid civil and criminal penalties." Factoring Criteria for Firearms with Attached "Stabilizing Braces," Final Rule, 88 Fed. Reg. 6,478, 6,552-53, 6,572 (Jan. 31, 2023). The Fifth Circuit thus easily rejected the same finality argument ATF raises here, observing "statements … throughout the Rule[] evince an effort to 'directly govern the conduct of members of the public, affecting individual rights and

2

obligations.'" *Mock*, 75 F.4th at 581 (citation omitted); *see id.* at n.45. ATF offers no response to that on-point decision.

Next, the Rule revokes "all previous classification letters" and declares them "no longer valid." Gov. Br. 10. That includes letters ATF issued to Appellant SB Tactical determining its products "would not alter the classification of a pistol or other firearm." 88 Fed. Reg. at 6,482-83 (original pistol stabilizing brace); *see also, e.g.*, *id.* at 6,483 (SB15), 6,492 (SBL-Mini). These were widely distributed, and the record confirms that the public and Appellants relied on them. Now that they have been revoked, reliance "risk[s] criminal and civil penalties." *Hawkes*, 782 F.3d at 1000. That adverse effect is caused by the Rule, not the mere existence of the NFA. Thus, the Rule determines rights and obligations.

Contrary to ATF's assertion, it makes no difference whether the Rule is "interpretive" because "an interpretive rule construing existing law can constitute final action." *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 406 (D.C. Cir. 2020); *see Gonzales v. Oregon*, 546 U.S. 243, 255, 275 (2006). As the Fifth Circuit already held, this Rule "is legislative," *Mock*, 75 F.4th at 578, and it is final regardless of label.

In any event, ATF forfeited its finality argument. "[A] 'finality' objection must be raised by the agency in order to be preserved." *Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012). But ATF never raised finality of the Rule in the

3

district court, calling the issue "unclear." ATF District Court Opp'n to Mot. for Prelim. Inj., R.Doc. 63, at 13 n.5. Because ATF declined to present finality there, it "forfeited the objection" here. *Marcum*, 694 F.3d at 128; *see also Ridenour v. Boehringer Ingelheim Pharms., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012).

The Adjudications are also reviewable. Appellants' Br. 48-50. ATF agrees its "classification decision[s] [are] 'final agency action' and thus reviewable under the APA," *Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 600 n.1 (1st Cir. 2016); *see also* Gov. Br. 32 (acknowledging classifications are reviewable), but here claims its decisions "have no legal consequences" and merely "contain cautionary guidance" that can be disputed "in any future enforcement proceeding," Gov. Br. 22-23. That is the position this Court rejected in *Hawkes*, explaining it "ignores reality" for a federal agency to label a classification "merely advisory" where, as here, it is backed by "draconian penalties" and thus "has a powerful coercive effect." 782 F.3d at 1002; *see also id.* at 1000 (holding decision final where it "would have effect only if and when a particular [enforcement] action was brought"). Just like the action in *Hawkes*, the classifications here compel regulated parties "to dance to [the Government's] tune." *Id.* at 1002; *see also* App. 649-51; R.Doc. 66-1 ¶¶ 9-12 (identifying more than 40 of Appellants' products newly classified as short-barreled rifles). Because the Adjudications determine rights, they are reviewable.

4

In an undeveloped footnote, ATF for the first time says Appellants' suit "must clear the Tax Anti-Injunction Act." Gov. Br. 19 n.2. That cursory footnote remark doesn't preserve any argument. *See Koehler v. Brody*, 483 F.3d 590, 599 (8th Cir. 2007). Regardless, in *CIC Services, LLC v. IRS*, 593 U.S. 209 (2021), the Supreme Court held APA suits may proceed against regulations under the tax code where, as here, "the relief the suit requests" is setting aside the rule, not enjoinment of a "tax obligation." *Id.* at 218-19; *see Sig Sauer*, 826 F.3d at 600 n.1 (noting ATF's agreement on reviewability). The Tax Anti-Injunction Act does not purport to bar this suit, and ATF does not contend otherwise.

## B. ATF Confirms The Rule Violates The Statutes.

### 1. ATF Still Misinterprets "Short-Barreled Rifle."

Appellants showed how the Rule wrongly conflates 26 U.S.C. § 5845(a)(3) with (a)(4) and overlooks subsections (e) and (i), thereby interpreting "firearm" to conflict with the text, structure, history, and purpose of the NFA and GCA. Appellants' Br. 21-25. ATF purports to disagree, but confirms Appellants' point by divorcing subsections (a)(3) and (c) from their context and denying that "the NFA intentionally excludes pistols." Gov. Br. 29.

The latter point is settled against ATF. The NFA defines a "firearm" as eight weapons with a catchall provision for "any other weapon." 26 U.S.C. § 5845(a). "Any other weapon" means "any weapon or device capable of being

5

concealed on the person from which a shot can be discharged" but "shall not include a pistol or a revolver having a rifled bore." 26 U.S.C. § 5845(a)(5), (e). Thus, the NFA exempts pistols from its definition of "firearm." *United States v. Anderson*, 885 F.2d 1248, 1254 (5th Cir. 1989) (en banc) ("the National Firearms Act does not treat … pistols … as anything other than perfectly innocent, legal items. It does not purport to … regulate them in any manner.").[1] Properly assessed, the question is not whether pistols are exempt, but whether stabilizing braces make pistols short-barreled rifles.

The statutory answer is "no." As Appellants explained, neither NFA subsection addressing short-barreled rifles applies to modified pistols. Appellants' Br. 21-25. ATF concedes as much with respect to subsection (a)(4), agreeing that the statutory phrase "weapon made from a rifle if such weapon as modified" by its terms "reaches only short-barreled rifles 'made' by non-licensees" from guns that were originally produced as "rifles." Gov. Br. 28.

But ATF refuses to concede the structural implication of that point. It insists subsection (a)(3) is not a complement to subsection (a)(4) that applies to

---

[1] Until now, the Government has not claimed otherwise. Shortly after the NFA's enactment, Attorney General (and future Justice) Jackson explained that the statute permits "the citizen to keep a pistol or revolver for his own protection without any restriction." United States Br. 8, *United States v. Miller*, 307 U.S. 174 (1939), 1939 WL 48353, at *8 (quoting H. Rep. No. 1780 (1934)). And the Department had maintained that view ever since. *See, e.g.*, United States Br. 4-5, *Johnson v. United States*, 576 U.S. 591 (2015), 2014 WL 4073207, *4-5.

6

manufactured short-barreled rifles. Instead, ATF claims (at 28) subsection (a)(3) reaches both guns manufactured as short-barreled rifles *and* guns "made" or "modified" into short-barreled rifles after manufacture. But subsection (a)(4) uses the terms "made" and "modified" while subsection (a)(3) omits them.

According to ATF (at 28), its expansive reading of subsection (a)(3) is not foreclosed by "the text," but the agency never explains why that text omits the terms used in subsection (a)(4). And though ATF would import "made" (and "modified") into subsection (a)(3), it leaves "from a rifle" behind. The result is a statute never enacted by Congress that ATF says authorizes it to regulate a weapon made from *a pistol* instead of "a weapon made from *a rifle*." 26 U.S.C. § 5845(a)(4) (emphasis added).

Nor does ATF have a satisfactory answer to the superfluity its construction creates, as its response shows "why the government's proffered interpretation doesn't work." *Lopez-Chavez v. Garland*, 991 F.3d 960, 967 n.8 (8th Cir. 2021). The agency says (at 28-29) subsection (a)(4) is not superfluous because it regulates buttstock removal. But if, as the Rule says, a braced pistol is a "rifle," then ATF's position in its brief would create an absurd result: attaching and immediately removing a brace from an unregulated pistol would forever render that same pistol a "firearm" "made from a rifle" under subsection (a)(4). That cannot be right. And indeed, the Rule rightly disclaims the notion, stating that "permanent removal

7

of the 'stabilizing brace'" will "remove the firearm from the purview of the NFA." 88 Fed. Reg. at 6,558. But the agency has no way to square that interpretive circle, and the need for this unexplained concession confirms that ATF has misread the statute. It also shows that with respect to braced pistols even ATF disavows the only work (a)(4) could perform.

ATF tries to overturn Congress's decision to omit firearm modifications from the ambit of subsection (a)(3) by observing that subsection (c) "defines [a] 'rifle' as a firearm that is 'designed or redesigned, made or remade, and intended to be fired from the shoulder.'" Gov. Br. 27 (quoting 26 U.S.C. § 5845(c)). But a "rifle," without more, is not an NFA "firearm," *see Mock*, 75 F.4th at 568 ("an ordinary rifle … is not an NFA 'firearm'"), so, the conclusion that a pistol is a "rifle" does not make it a "firearm."

Indeed, that was the point of *United States v. Thompson/Center Arms Co.*, 504 U.S. 505 (1992), which *reversed* ATF's determination that a pistol packaged with a rifle stock and barrel was a "firearm." ATF notes the plurality's determination that the pistol "ha[d] been 'made' into a rifle" under subsection (c). Gov. Br. 27 (quoting 504 U.S. at 513 n.6). But ATF overlooks the next step, where the plurality examined "whether this combination of parts [also] constitute[d] a short-barreled rifle" under subsection (a). 504 U.S. at 513 n.6. Because the plurality found that question ambiguous, it held the pistol "ha[d] not

8

been 'made' into a short-barreled rifle for purposes of the NFA." *Id.* at 518. Thus, *Thompson* confirms that a gun must satisfy both subsection (a) and subsection (c) to be a "firearm" under the NFA.

ATF derides Appellants (at 29-31) for observing that the statutes Congress wrote are consistent with its purpose to regulate sawed-off weapons, overlooking "that multiple grounds support[ing] a result is usually regarded as a strength, not a weakness." *Biden v. Nebraska*, 143 S. Ct. 2355, 2375 n.9 (2023). All agree Congress enacted the NFA to stop proliferation of shortened long guns. That the Rule instead regulates lengthened short guns confirms ATF's misinterpretation.

### 2. *ATF Still Misinterprets "Rifle."*

#### a. Designed

Appellants showed that the Rule misinterprets "rifle," wrongly rejecting the Supreme Court's "principal use" limitation on the term "designed." *Hoffman*, 455 U.S. at 501. As Appellants explained, the Rule fails that standard because it interprets "'designed' to exclude all evidence that a stabilizing brace is suitable for unregulated use as a brace." Appellants' Br. 26.

ATF says Appellants "misunderstand[ ] the rule." Gov. Br. 31. But the agency does not deny that the Rule deems "stabilizing support" "not relevant to determine whether a firearm is designed, made, and intended to be fired from the

9

shoulder." 88 Fed. Reg. at 6,510.[2]  That error is foundational, because examining only evidence showing that a brace could be shouldered precludes any showing of design for unshouldered use.  To borrow the facts of *Hoffman*, it would be like considering evidence that a paperclip can hold a joint while ignoring evidence that a paperclip can hold documents.

Perhaps that is why ATF ignores *Hoffman* to argue "nothing in the NFA incorporates ... a principal-design limitation."  Gov. Br. 33.  *But see* Gov. Resp. Mot. Inj. Pending Appeal 9 (conceding principal-use limitation).  But that overlooks that the NFA says "designed," the same term the Supreme Court interpreted in *Hoffman*.  And the agency's contention (at 33) that a gun need not be "exclusively" designed for shoulder-fire to count as a short-barreled rifle is beside the point because, as Appellants already explained, the inquiry is "principal" use, not "exclusive" use.  *See* Appellants' Br. 28.

*Thompson* confirms Appellants' interpretation.  As explained, the plurality there determined that a pistol packaged with a rifle stock and barrel was not an NFA "firearm."  Specifically, it found that question ambiguous (and thus resolved

---

[2]  *See also id.* at 6,503 (it is "incorrect to focus on whether a 'stabilizing brace' can be used, in some circumstances, to support two-handed, non-shouldered fire"), 6,514 (stabilizing support "not the correct inquiry"), 6,532 ("stabilizing support is not a relevant objective design feature and therefore is not incorporated into this rule"), 6,557 (pistol-firing "irrelevant").  Given these clear statements, ATF's suggestion that stabilizing support might come in through "marketing and promotional materials," Gov. Br. 32, contradicts the Rule.

Appellate Case: 23-3230     Page: 16     Date Filed: 01/09/2024 Entry ID: 5351789

for the private party under lenity) because the gun parts could serve a "useful purpose" other than making a short-barreled rifle. 504 U.S. at 512-13, 517-18. ATF calls *Thompson* "unilluminating," Gov. Br. 33-34, but overlooks that the plurality there considered the type of evidence ATF refuses to consider here— evidence showing that a stabilizing brace serves a "useful purpose" other than the creation of a short-barreled rifle.

Despite its newfound opposition to the Supreme Court's principal-use teaching, ATF applied it for more than a decade. In the Notice preceding the Rule, ATF described "[s]tabilizing support" as "a vital characteristic" for its analysis "because it provides evidence to evaluate the purported purpose of the attached device." Factoring Criteria for Firearms with Attached "Stabilizing Braces," Notice of Proposed Rulemaking, 86 Fed. Reg. 30,826, 30,832 (June 10, 2021). Inexplicably, the Rule reverses course and deems this "vital characteristic" "irrelevant." Because the Rule's interpretation of "designed" contradicts the plain meaning of that term as interpreted by the Supreme Court in *Hoffman*, the Rule violates the statute.

### b. Intended

Appellants showed how the Rule misinterprets "intended" by authorizing ATF to determine intent based on third-party information. Appellants' Br. 28-29. The Fifth Circuit agrees, explaining that the Rule is unlawful because (among other

11

problems) it wrongly "hold[s] citizens criminally liable for the actions of others." *Mock*, 75 F.4th at 586.

ATF refuses to engage the Fifth Circuit's decision (and decisions from the Seventh and Eleventh Circuits, *see* Appellants' Br. 29). It argues that under *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513 (1994), "'the actual use of [an] item in the community' may be relevant to whether a product [is] 'primarily intended' for a particular use." Gov. Br. 34. But ATF overlooks that the statute there, unlike the statute here, expressly authorized consideration of the "uses of the item in the community." 511 U.S. at 519 n.7 (quoting 21 U.S.C. § 857(e)(7) (since repealed)). Contrary to ATF's position here, *Posters 'N' Things* did not hold that "intended" connotes such an examination generally. Moreover, the Supreme Court cautioned that the term "primarily intended" must "be understood objectively" and "not" as the likely use of "any particular customer." *Id.* at 521 & n.11.

The Rule takes the path the Supreme Court rejected, authorizing ATF to determine "intended" use based on particular individuals. For example, the Rule highlights misuse of a brace by two individuals as supposed evidence of manufacturer intent. 88 Fed. Reg. at 6,546. (Meanwhile, the Rule ignores contrary record evidence, including the design patent and examples of proper use by individuals. Appellants' Br. 27, 45.) That confirms that the Rule violates the statute by misinterpreting "intended."

12

ATF claims the Court need not worry about holding defendants liable for third-party opinions because, in an NFA prosecution, the Government must prove "the defendant 'knew the weapon he possessed had the characteristics that brought it within the statutory definition of a' short-barreled rifle." Gov. Br. 35. But that argument assumes ATF must prove the defendant's knowledge of the "community information" that makes his pistol a short-barreled rifle. And if that is so, then felony criminal consequences turn on which "magazines" and "online videos" the defendant has viewed. *See* 88 Fed. Reg. at 6,545-48. Congress could not have intended that absurd result, confirming that ATF's third-party intent inquiry is misguided.

### 3. *ATF Still Rejects Lenity.*

ATF agrees that lenity applies if the NFA is sufficiently ambiguous but claims Appellants have "fail[ed] to identify any ambiguity." Gov. Br. 35-36. But Appellants argued both here and below that the statutory terms "firearm" and "rifle" are at least "grievously ambiguous as applied to braces." Appellants' Br. 30.

The district court recognized Appellants' arguments, conceding "there is ambiguity" in the NFA and acknowledging Appellants' made "reasonable arguments in support of their" interpretation of "rifle" (but stopping short of applying lenity). ADD-13-14; App. 665-66; R.Doc. 90, at 13-14. The Rule itself

13

likewise concedes ambiguity, asserting over two dozen times that it proffers the agency's "best interpretation" of the statutes (despite long interpreting them differently). 88 Fed. Reg. at 6,480, 6,500, 6,501, 6,502, 6,507, 6,508, 6,509, 6,510, 6,511, 6,531, 6,548, 6,551, 6,552, 6,553, 6,554, 6,555, 6,556, 6,557, 6,559, 6,560, 6,561, 6,569.

ATF asserts that any ambiguities are insufficiently demonstrated, claiming the Rule is not "a change in [the agency's] legal position." Gov. Br. 36-37. But the Rule says the opposite, candidly stating "this rule is a change in position." 88 Fed. Reg. at 6,502; *see also ibid.* (discussing standard when "an agency changes course"); *id.* at 6503 (purporting to "rectify" past "misapplication of the statutory definition"). And nowhere in its brief does ATF address rulings from the Fifth and Sixth Circuits holding that similar ATF reversals of longstanding NFA interpretations triggered lenity. *See Hardin*, 65 F.4th at 897-902; *Cargill*, 57 F.4th at 469-71.

The record confirms the sea change here. When ATF first decided the brace issue in 2012, it held that "the submitted forearm brace, when attached to a firearm, does not convert that weapon to be fired from the shoulder and would not alter the classification of a pistol or other firearm" and thus "*would not be* subject to NFA controls." App. 458; R.Doc. 1-15, at 1. The agency issued at least 17 similar classifications likewise holding braces "did not redesign a firearm to be fired from

14

the shoulder." 88 Fed. Reg. at 6,502 & n.84. In 2017, the agency reaffirmed an open letter that "made it clear that," as a general matter, "stabilizing braces are perfectly legal accessories for large handguns or pistols." App. 563; R.Doc. 1-20, at 1. The Department took the same position in criminal proceedings, explaining that ATF considered a pistol equipped with a brace exempt from the NFA. App. 511; R.Doc. 1-19, at 38:9-15.

ATF argues its prior repeated approvals of stabilizing braces were never "categorical." Gov. Br. 36. But even if that were correct, the Rule changes *how* the agency analyzes braces. Prior to the Rule, ATF examined whether a brace "could be used as a 'brace.'" 88 Fed. Reg. at 6,502; *see* Notice, 86 Fed. Reg. at 30,832. But after the Rule, ATF deems effectiveness as a brace "irrelevant." *Supra* n.2 (collecting citations). As a result, ATF reversed its position with respect to the specific braces it previously approved. *Compare* 88 Fed. Reg. at 6,502 n.84 (listing brace models ATF previously held unregulated) *with* App. 341, 323-26, 331; R.Doc. 1-7, at 33 (PSB), 15-18, 23 (Tailhook), *and* App. 275, 282, 307, 297; R.Doc. 1-6, at 11, 18, 43 (Shockwave Blade), 33 (Strike Industries MPX). ATF's new approach not only violates the statute, it reflects a clear change in both the agency's general approach and its conclusion about specific braces.

The bottom line is that "ATF's own flip flop" shows that "the statute is subject to more than one reasonable interpretation." *Hardin*, 65 F.4th at 898

(quotation omitted); *see Bittner v. United States*, 598 U.S. 85, 97 n.5 (2023) (plurality) ("when the government … speaks out of both sides of its mouth, no one should be surprised if its latest utterance isn't the most convincing one."). In addition to the flip-flop, Appellants' "viab[le]" "competing interpretations" confirm the terms "firearm" and "rifle" are at least "ambiguous" as applied to braces. *See Hardin*, 65 F.4th at 898. But under the rule of lenity, the NFA must "clearly and unambiguously" cover braces for the regulation to be upheld. *Id.* at 902; *see also Thompson*, 504 U.S. at 517-18 (applying lenity to resolve an NFA "ambiguity"); *Cargill*, 57 F.4th at 469-71 (same). Because it does not, lenity applies and the Rule must be set aside.

### 4.    *ATF Still Rejects Avoidance.*

ATF does not dispute that pistols are constitutionally protected, lawfully bearable arms. Nor does it deny that "making common, safety-improving modifications to otherwise lawfully bearable arms" is "protected Second Amendment 'conduct.'" *Mock*, 75 F.4th at 588 (Willett, J., concurring); *accord* Members of Congress Br. 6-11.

Instead, ATF assumes the merits and asserts "short-barreled rifles" are "not protected by the Second Amendment." Gov. Br. 38. But such question begging will not do when the dispute is *whether* the addition of a brace makes a short-barreled rifle. Rather, as Appellants (and *amici*) explained both here and below,

16

that issue raises at least a substantial question. That implicates avoidance because statutes must "be construed to defeat administrative orders that raise substantial constitutional questions." *Bell Atl. Tel. Companies v. FCC*, 24 F.3d 1441, 1445 (D.C. Cir. 1994); *accord Union Pacific R. Co. v. DHS*, 738 F.3d 885, 893-95 (8th Cir. 2013) (rejecting agency construction over constitutional doubt).

### C. ATF Confirms The Rule Is Arbitrary.

#### 1. *ATF Confirms The Factors Are Holistically Arbitrary.*

Appellants and the Fifth Circuit explained how the Rule's "six-part test" provides "no meaningful clarity" because under that test it is "nigh impossible for a regular citizen to determine what constitutes a braced pistol." *Mock*, 75 F.4th at 584-85; *see* Appellants' Br. 33-36. Although ATF cites cases where some multifactor tests have been permitted, it does not dispute that *this* multifactor test lacks the requisite predictability and intelligibility to avoid arbitrariness. *See also, e.g.*, *Innovator Enterprises, Inc. v. Jones*, 28 F. Supp. 3d 14, 22 (D.D.C. 2014) (holding six-factor test adopted by ATF under NFA was arbitrary).

To the contrary, ATF's contentions (at 40-42) that Appellants must wait until it issues additional classifications confirms that Appellants and the Fifth Circuit are right. If the Rule were clear, then nothing further would be needed. ATF's argument that Appellants cannot know how they are affected without additional classifications shows that the Rule is a cloak for agency whim.

17

Appellants' Br. 35. It also shows that the Rule commits a clear error of judgment and is internally inconsistent—which ATF does not contest—because the Rule says it proffers a clear test, *see, e.g.*, 88 Fed. Reg. at 6,513 ("this rule … describ[es] clear and unambiguous objective design features that can be readily assessed."), 6,551 (asserting Rule "will allow members of the firearm industry and the public" to determine whether pistol is "a short-barreled rifle"), when it does not. Appellants' Br. 36-37.

Finally, ATF's argument that its six-part test cannot be evaluated on its merits also ignores a half-century of administrative law authorizing facial, pre-enforcement challenges to statutory interpretations. *See generally Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967). The Rule is ripe for arbitrary-and-capricious review.

### 2. *ATF Confirms The Factors Are Individually Arbitrary.*

#### a. Rear Surface Area

ATF defends its choice not to quantify rear surface area by asserting its "desire" for "flexibility." Gov. Br. 42. But ATF "has not claimed that it is impossible to be more precise" and does not dispute that courts generally "require *some* metric for classifying materials." *Tripoli Rocketry*, 437 F.3d at 81 (emphasis in original).

18

Indeed, ATF abandoned the Noticed proposal because it "did not provide a particular metric to quantify the rear surface area," leaving it "open to subjective interpretation and application."    Appellants' Br. 39 (quoting 88 Fed. Reg. at 6,522).  Yet the Rule has the same problem because it also refuses to quantify rear surface area, and the agency does not claim otherwise.  This shows the Rule is at least "internally inconsistent."  *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1028 (D.C. Cir. 2018).  And it underscores how ATF failed to consider "an important aspect of the problem," *Spirit Airlines, Inc. v. FAA*, 997 F.3d 1247, 1255 (D.C. Cir. 2021), because many commenters asked the agency to specify rear surface area so they could avoid felony criminal liability.

Furthermore, counsel's assertion (at 42) that "bright line rule[s]" would enable "circumvention" concedes the agency intends this factor as "a Sword of Damocles hanging over the heads of American gun owners."  *VanDerStok v. Garland*, 86 F.4th 179, 197 (5th Cir. 2023) (Oldham, J., concurring); *see Mock*, 75 F.4th at 570-71, 584-85.  It is not "circumvention" to obey a clear rule; it is compliance.  In any event, the agency did not argue that a "mathematically defined" standard would not work because of the need for "flexibility," Gov. Br. 42, so counsel's new rationale cannot be considered here, *DHS v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1908-10 (2020).

The surface-area factor is arbitrary.

19

### b. Weight, Length, and Length of Pull

ATF's weight, length, and length-of-pull factors purport to assess whether a braced pistol has features that are "consistent with" "similarly designed rifles." 88 Fed. Reg. at 6,575. ATF does not dispute that these factors employ the same "unbounded relational definition" that the D.C. Circuit found arbitrary in a prior ATF classification analysis. *Tripoli Rocketry*, 437 F.3d at 81. ATF does not dispute that it failed to explain what it means for one measurement to be "consistent with" another. ATF does not dispute that the possible benchmark(s) for comparison consist of 12,000 rifles in a non-public database. ATF does not dispute that it failed to consider or explain why it rejected "minimum or maximum weight," length, and length-of-pull criteria. 88 Fed. Reg. at 6,521. Finally, ATF does not dispute that it took this amorphous approach, notwithstanding commenters' calls for clarity to avoid criminal penalties and the agency's own acknowledgment of the need for "readily ascertainable" criteria. These concessions are sufficient for this Court to hold that the Rule is arbitrary.

Notwithstanding these concessions, ATF claims the Rule adequately identifies which rifle(s) it will select from its non-public database as the relevant comparator(s) because ATF will compare "similar" guns. Gov. Br. 43. But, as Appellants explained, that begs the question of how ATF determines whether guns

20

are "similar." Appellants' Br. 41. On that issue, neither the Rule nor ATF's brief offers any explanation.

ATF next disputes that it is arbitrary for the agency to classify a braced pistol as a rifle simply by identifying superficial similarities with rifles, such as weight and length of pull. *But see Innovator Enterprises*, 28 F. Supp. at 25-26; *VanDerStok*, 86 F.4th at 214 (Oldham, J., concurring). ATF baldly asserts that these superficial comparisons are "clearly probative" and cites 23 pages of the Federal Register. Gov. Br. 44. But neither ATF's conclusory assertion nor its naked citation explain why a facile comparison of "weight," for example, has anything to do with shouldering. Indeed, the record evidence establishes that pistols commonly fall within the weight and length-of-pull ranges the agency says are probative of shouldering. Appellants' Br. 43-44. ATF ignores this evidence— both in the Rule and in its brief.

These factors are arbitrary.

### c. Marketing and Community Information

ATF does not dispute that the Rule claims "the method in which a 'stabilizing brace' may be used, in isolated circumstances or by a single individual," is not "relevant." 88 Fed. Reg. at 6,519. ATF also does not dispute that the Rule nevertheless considers such information relevant under its "community information" factor—citing as probative two individuals who appear

Appellate Case: 23-3230     Page: 27     Date Filed: 01/09/2024 Entry ID: 5351789

to be misusing a stabilizing brace. *Id.* at 6,546. And ATF does not dispute that these statements are flatly inconsistent and allow the agency to cherry-pick "community information" to achieve a desired result under its purportedly objective factor. These concessions are sufficient to hold that the Rule is arbitrary.

### 3. ATF Confirms It Arbitrarily Failed To Consider Costs And Reliance Interests.

ATF agrees its cost analysis failed to "quantify how many braces were sold between 2020 and 2022." Gov. Br. 45. As Appellants explained, that error is significant enough to make the rule arbitrary: ATF concedes that the omitted years were three of the six highest, and commenters told ATF its estimates were too low. Appellants' Br. 46-48.

Counsel says ATF adjusted for "imperfect data" by estimating a range that accounted for sales between 2020 and 2022. Gov. Br. 45. But the record says otherwise. According to the Rule and Regulatory Flexibility Analysis, ATF doubled its low estimate to "account for uncertainty" of costs incurred "*between the years 2013 to 2020*" and not to cover later years as counsel now claims. App. 186; R.Doc. 1-5, at 18 (emphasis added). That means ATF's entire range was based on the wrong data. As the D.C. Circuit recently explained, if an agency's "low-end and high-end estimates" are both "derived" from incomplete inputs, that does not mean "just that the low-end estimate was too low but that the entire range of cost estimates would shift upward if" the original error "were corrected."

22

*Window Covering Manufacturers Ass'n v. CSPC*, 82 F.4th 1273, 1289 (D.C. Cir. 2023) (cleaned up). ATF's use of a range to calculate sales between 2012 and 2020 cannot cure its unexplained decision to exclude sales between 2020 and 2022.

Nor is ATF correct that its 95-page cost-benefit analysis is an unreviewable box-checking exercise with no effect on decisionmaking. Gov. Br. 45-47. First, Appellants showed that the statutes mandate an assessment of costs. Appellants' Br. 46. ATF expresses disagreement (at 46) but does not address the Supreme Court's teaching that a statutory instruction to determine whether a regulation is "necessary" requires "treat[ing] cost as a centrally relevant factor." *Michigan v. EPA*, 576 U.S. 743, 752-53 (2015).

Next, ATF concedes that a flawed cost-benefit analysis may render a rule arbitrary "when an agency decides to rely on" it. Gov. Br. 46; *accord Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1039-40 (D.C. Cir. 2012). ATF's claim that did not happen here is belied by the Rule's repeated invocation of the Regulatory Flexibility Analysis to justify its decision. *See* 88 Fed. Reg. at 6,559-67. And if ATF truly failed to consider costs, that would be an independent reason to hold the Rule unlawful. *See Michigan*, 576 U.S. at 752-53.

Finally, ATF does not dispute that it failed to consider reliance interests associated with braces sold after 2020. The agency says (at 45) it discussed reliance interests generally, but its conceded failure to consider interests of

millions of brace owners renders the Rule "arbitrary and capricious in violation of the APA." *Regents*, 140 S. Ct. at 1913-15.

**D.    ATF Confirms The Adjudications Are Arbitrary.**

ATF agrees with Appellants and the Fifth Circuit that it "did not provide explanations with its contemporaneous adjudications." *Mock*, 75 F.4th at 585; *see* Appellants' Br. 48-50.    ATF says it "intend[s] to follow up" with those explanations later.  Gov. Br. 40.  But that cannot cure the error because the APA requires "contemporaneous explanations for agency action." *End Citizens United PAC v. FEC*, 69 F.4th 916, 922 (D.C. Cir. 2023).

Nor can the Adjudications be affirmed on the photographs.  ATF says it need not explain because braced pistols look like short-barreled rifles.  Gov. Br. 48-50.  But that is a fallacy.  For one thing, braced pistols also look like pistols:



Figures 1 & 2: AR-style braced pistol regulated by Rule (top) and AR-style unbraced pistol unregulated by Rule (bottom).  *See* 88 Fed. Reg. at 6,492, 6538.

24

And looks can be deceiving: "One could make a cake that looks like a hamburger, just as one could make a cake that looks like" a short-barreled rifle. *VanDerStok*, 86 F.4th at 214 (Oldham, J., concurring). "But that does not make the former taste like a Big Mac, just as it does not make the latter covered by the [NFA]." *Ibid.* ATF's reliance on photographs alone is arbitrary.

## II. ATF CONFIRMS THE REMAINING FACTORS FAVOR PRELIMINARY RELIEF.

### A. ATF Confirms Appellants' Irreparable Harm.

ATF agrees that SB Tactical is incurring unrecoverable economic loss in the form of "substantially reduced sales following the Rule." Gov. Br. 49. Such "unrecoverable economic loss" constitutes "irreparable harm." *Iowa Utilities Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996).

Citing cases about standing, ATF claims SB Tactical's harm is traceable to its customers, not the Rule. But causation arises from "the predictable effect of Government action on the decisions of third parties." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019) (quotation omitted). That applies here, where the record confirms the Rule will "reduc[e] … use of firearms with attached 'stabilizing braces.'" 88 Fed. Reg. at 6,481; *see* App. 677; R.Doc. 95-2 ¶¶ 5-6. Contrary to ATF's telling, Appellants' injuries do not arise from "the unfettered choices made by independent actors," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992), but the direct and appreciable consequences of the Rule. *See also*

25

*Mock v. Garland*, 2023 WL 6457920, at \*13-\*16 (N.D. Tex. Oct. 2, 2023) (brace manufacturer "easily" showed "irreparable harm").

ATF says SB Tactical inflicted its own injury by "cho[osing] not to manufacture [NFA-exempt] designs." Gov. Br. 51. But as the Fifth Circuit recognized, ATF cannot provide "a single … example of a pistol with a stabilizing brace that would constitute an NFA-exempt braced pistol." *Mock*, 75 F.4th at 585, 575. SB Tactical cannot be expected to succeed where ATF could not. In any event, the mere "possibility of an alternative" course "does not render [an] injury self-inflicted." *Oklahoma Dep't of Env't Quality v. EPA*, 740 F.3d 185, 190 (D.C. Cir. 2014); *see also Polymer80, Inc. v. Garland*, 2023 WL 3605430, at \*10 (N.D. Tex. Mar. 19, 2023).

In addition to economic harm, SB Tactical and B&T USA continue to suffer ongoing irreparable reputational damage and loss of customer goodwill because of the Rule. Appellants' Br. 53-54. ATF does not dispute this "reputational harm," which is sufficient to find that commercial Appellants have shown "irreparable injury." *Kroupa v. Nielsen*, 731 F.3d 813, 820-22 (8th Cir. 2013).

With respect to the States, ATF admits they will bear costs. That should end the discussion, as "complying with a regulation later held invalid almost always produces irreparable harm of nonrecoverable compliance costs." *R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 194 (5th Cir. 2023). But the agency dismisses

26

those costs as "ordinary," ignoring how federal sovereign immunity makes them unrecoverable. The agency is also wrong to demand that the States specifically quantify them, as irreparable harm can occur even when harm "is difficult, if not impossible, to quantify." *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003); *see also Rest. L. Ctr. v. United States Dep't of Lab.*, 66 F.4th 593, 600 (5th Cir. 2023) ("Stringently insisting on a precise dollar figure reflects an exactitude our law does not require."). Relatedly, ATF misses the point when it comes to cataloguing these braces: States must either divert law-enforcement resources to catalog them or dispose of them outright. Either outcome hurts the States' public-safety officers.

ATF is further wrong in thinking that the States are asserting only *parens patriae* interests when they describe the harms to their own interests in (1) tourism and recreation and (2) public safety. The States have separate, freestanding interests in both; ATF summons no authority saying otherwise. *See also, e.g.*, *United States v. Bundy*, 2013 WL 3463610, at *2 (D. Nev. July 9, 2013) (holding government was irreparable harmed by "threat to public safety"). Although the States' individual citizens will no doubt suffer harm, too, those personal harms don't erase the harm to the States' broader proprietary or societal concerns.

ATF disputes Richard Cicero's harm by claiming (at 52-53) he could comply with the Rule or use different guns. But that argument overlooks Cicero's

27

nonrecoverable compliance costs and shortchanges his constitutional rights if his guns are protected pistols and not short-barreled rifles (as indeed they are). ATF's assertion (at 52) that a misclassification should not matter because the NFA's burdens are "relatively minor" denies the fundamental premise of the statute and the Rule—i.e., that extending registration requirements will stop persons from using disfavored weapons. Cicero has shown irreparable harm.

### B. ATF Confirms The Balance Of Harms And Public Interest Favor Preliminary Relief.

ATF says (at 53) an injunction will harm "public safety." But the agency does not dispute that before the Rule it agreed many braced pistols were not subject to the NFA, so an injunction would merely continue the "status quo." *Nebraska v. Biden*, 52 F.4th 1044, 1048 (8th Cir. 2022). Nor does ATF try and square its "public safety" concern with the representation it has already stopped enforcement. And though ATF asserts an interest in "regulatory clarity," Gov. Br. 53, it still ignores the Fifth Circuit's finding that the Rule "provides no meaningful clarity," *Mock*, 75 F.4th at 585; *see* Appellants' Br. 57.

ATF's assertion (at 54) that any injunction must be limited to Appellants is contradicted by its cited cases. These say an injunction must "provide complete relief," *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979), and here, complete relief requires a nationwide injunction, *see* Gov. Br. 11 n.1 (acknowledging difficulties with limited injunctions).

28

## CONCLUSION

The Court should reverse the lower court and remand with instructions to preliminarily enjoin ATF from enforcing the Rule and the Adjudications.

29

January 9, 2024

Respectfully Submitted,

/s/ Stephen J. Obermeier
Stephen J. Obermeier
Thomas M. Johnson, Jr.
Michael D. Faucette
Jeremy J. Broggi
Boyd Garriott
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
Tel: 202.719.7000
Fax: 202.719.7049
SObermeier@wiley.law
TMJohnson@wiley.law
MFaucette@wiley.law
JBroggi@wiley.law
BGarriott@wiley.law

Benjamin J. Sand (ND ID #07981)
**CROWLEY FLECK PLLP**
100 W Broadway Ave
Bismarck, ND 58501
Tel: 701.223.6585
Fax: 701.222.4853
bsand@crowleyfleck.com

*Counsel for Appellants FRAC, SB
Tactical, B&T, and Richard Cicero*

/s/ Lindsay See
PATRICK MORRISEY
Attorney General
LINDSAY SEE
Solicitor General
MICHAEL R. WILLIAMS
Principal Deputy Solicitor General

/s/ Philip Axt
DREW H. WRIGLEY
Attorney General
PHILIP AXT
Solicitor General

North Dakota Attorney General's

30

Office of the West Virginia Attorney General
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
(681) 313-4550
Lindsay.S.See@wvago.gov
Michael.R.Williams@wvago.gov

*Counsel for Appellant State of West Virginia*

Office
500 North 9th Street
Bismarck, ND 58501
(701) 328-2210
pjaxt@nd.gov

*Counsel for Appellant State of North Dakota*

/s/ Edmund G. LaCour Jr.
STEVE MARSHALL
Attorney General
EDMUND G. LACOUR JR.
Solicitor General

Alabama Attorney General's Office
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

*Counsel for Appellant State of Alabama*

/s/ Charles E. Brasington
TREG TAYLOR
Attorney General
CHARLES E. BRASINGTON
Assistant Attorney General

Alaska Attorney General's Office
1031 West Fourth Avenue, Suite 200
Anchorage, AK 99501
Phone: (907) 269-6612
charles.brasington@alaska.gov

*Counsel for Appellant State of Alaska*

/s/ Dylan L. Jacobs
TIM GRIFFIN
Attorney General
NICHOLAS J. BRONNI
Solicitor General
DYLAN L. JACOBS
Deputy Solicitor General

Arkansas Attorney General's Office
323 Center Street, Suite 200

/s/ Natalie P. Christmas
ASHLEY MOODY
Attorney General
NATALIE P. CHRISTMAS (Fla. Bar 1019180)
Counselor to the Attorney General

Florida Attorney General's Office
The Capitol, Pl-01
Tallahassee, Florida 32399-1050

31

Little Rock, Arkansas 72201
(501) 682-6302
nicholas.bronni@arkansasag.gov
dylan.jacobs@arkansasag.gov

*Counsel for Appellant State of Arkansas*

(850) 414-3300
(850) 410-2672 (fax)
natalie.christmas@myfloridalegal.com

*Counsel for Appellant State of Florida*


/s/ Stephen J. Petrany
CHRISTOPHER M. CARR
Attorney General
STEPHEN J. PETRANY
Solicitor General

Georgia's Attorney General's Office
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Appellant State of Georgia*

/s/ Joshua N. Turner
RAÚL R. LABRADOR
Attorney General
THEODORE J. WOLD
Solicitor General
JOSHUA N. TURNER
Deputy Solicitor General

Idaho Attorney General's Office
P.O. Box 83720-0010
Boise, ID 83720-0010
(208) 334-2400
(208) 854-8071 (fax)
josh.turner@ag.idaho.gov

*Counsel for Appellant State of Idaho*


/s/ Betsy M. Denardi
THEODORE E. ROKITA
Attorney General
BETSY M. DENARDI
Director of Complex Litigation

Indiana Attorney General's Office
Indiana Government Center South
302 W. Washington St., 5th Floor
Indianapolis, IN 46204
(317) 232-6231
Betsy.DeNardi@atg.in.gov

/s/ Eric H. Wessan
BRENNA BIRD
Attorney General
ERIC H. WESSAN
Solicitor General

Iowa Attorney General's Office
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

32

*Counsel for Appellant State of Indiana*    *Counsel for Appellant State of Iowa*

/s/ Jesse A. Burris
KRIS KOBACH
Attorney General
JESSE A. BURRIS
Assistant Attorney General

Kansas Attorney General's Office
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Tel: (785) 368-8197
Jesse.Burris@ag.ks.gov

*Counsel for Appellant State of Kansas*

/s/ Aaron J. Silletto
RUSSELL COLEMAN
Attorney General
AARON J. SILLETTO
Assistant Attorney General

Kentucky Attorney General's Office
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Phone: (502) 696-5300
Aaron.Silletto@ky.gov

*Counsel for Appellant Commonwealth of Kentucky*

/s/ Elizabeth B. Murrill
ELIZABETH B. MURRILL
Solicitor General
J. SCOTT ST. JOHN
Deputy Solicitor General
TRACY SHORT
Assistant Attorney General
MORGAN BRUNGARD
Assistant Solicitor General

Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, LA 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov
shortt@ag.louisiana.gov
brungardm@ag.louisiana.gov

*Counsel for Appellant State of*

/s/ Justin L. Matheny
LYNN FITCH
Attorney General
JUSTIN L. MATHENY
Deputy Solicitor General

Mississippi Attorney General's Office
550 High Street, Suite 1200
Jackson, MS 39201
Tel: (601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for Appellant State of Mississippi*

33

*Louisiana*

---

*/s/ Jeff P. Johnson*
ANDREW BAILEY
Attorney General
JOSHUA M. DIVINE
Solicitor General
JEFF P. JOHNSON
Deputy Solicitor General

Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel: (573) 751-8870
josh.divine@ago.mo.gov
jeff.johnson@ago.mo.gov

*Counsel for Appellant State of Missouri*


*/s/ Eric J. Hamilton*
MICHAEL T. HILGERS
Attorney General
ERIC J. HAMILTON
Solicitor General

Nebraska Attorney General's Office
2115 State Capitol
Lincoln, NE 68509
(402) 471-2683
Eric.Hamilton@nebraska.gov

*Counsel for Appellant State of Nebraska*


*/s/ Garry M. Gaskins, II*
GENTNER F. DRUMMOND

*/s/ Christian B. Corrigan*
AUSTIN KNUDSEN
Attorney General
CHRISTIAN B. CORRIGAN
Solicitor General
PETER MARTIN TORSTENSEN, JR.
Assistant Solicitor General

Montana Attorney General's Office
215 N Sanders St
Helena, MT 59601
(406) 444-2707
Christian.Corrigan@mt.gov
Peter.Tortstensen@mt.gov

*Counsel for Appellant State of Montana*


*/s/ Brandon F. Chase*
JOHN M. FORMELLA
Attorney General
BRANDON F. CHASE
Assistant Attorney General

New Hampshire Department of Justice
33 Capitol Street
Concord, NH 03301
(603) 271-3650
Brandon.F.Chase@doj.nh.gov

*Counsel for Appellant State of New Hampshire*


*/s/ J. Emory Smith*
ALAN WILSON

34

Attorney General
GARRY M. GASKINS, II
Solicitor General
ZACH WEST
Director of Special Litigation
AUDREY A. WEAVER
Assistant Solicitor General

Oklahoma Attorney General's Office
State of Oklahoma
313 N.E. 21ˢᵗ Street
Oklahoma City, OK 73105
(405) 521-3921
Garry.Gaskins@oag.ok.gov
Audrey.Weaver@oag.ok.gov

*Counsel for Appellant State of Oklahoma*

/s/ Charles D. McGuigan
MARTY J. JACKLEY
Attorney General
CHARLES D. MCGUIGAN
Chief Deputy Attorney General

South Dakota Attorney General's Office
1302 E. Highway 4, Suite 1
Pierre, SD 57501
605-773-3215
Charles.Mcguigan@state.sd.us

*Counsel for Appellant State of South Dakota*

/s/ Melissa Holyoak

Attorney General
J. EMORY SMITH, JR.
Deputy Solicitor General

South Carolina Attorney General's Office
Post Office Box 11549
Columbia, South Carolina 29211
Phone: (803) 734-3680
Fax: (803) 734-3677
Email:   ESmith@scag.gov

*Counsel for Appellant State of South Carolina*

/s/ Whitney D. Hermandorfer
JONATHAN SKRMETTI
Attorney General and Reporter
ANDRÉE S. BLUMSTEIN
Solicitor General
WHITNEY D. HERMANDORFER
Assistant Solicitor General

Tennessee Attorney General's Office
P.O. Box 20207
Nashville, TN 37202
(615) 253-5642
Whitney.Hermandorfer@ag.tn.gov

*Counsel for Appellant State of Tennessee*

/s/ Andrew N. Ferguson

35

SEAN REYES
Attorney General
MELISSA HOLYOAK
Solicitor General

Utah Attorney General's Office
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
(801) 538-9600
melissaholyoak@agutah.gov

*Counsel for Appellant State of Utah*

JASON MIYARES
Attorney General
ANDREW N. FERGUSON
Solicitor General
KEVIN M. GALLAGHER
Deputy Solicitor General
M. JORDAN MINOT
Assistant Solicitor General

Virginia Attorney General's Office
202 North 9th Street
Richmond, Virginia 23219
(804) 786-2071
aferguson@oag.state.va.us
kgallagher@oag.state.va.us

*Counsel for Appellant Commonwealth
of Virginia*

*/s/ Ryan Schelhaas*
BRIDGET HILL
Attorney General
RYAN SCHELHAAS
Chief Deputy Attorney General

Wyoming Attorney General's Office
Counsel for the State of Wyoming
109 State Capitol
Cheyenne, WY 82002
Telephone: (307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for Appellant State of
Wyoming*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations imposed by Federal Rule of Appellate Procedure 32(a)(7)(B)(ii). It contains 6,496 words, excluding the parts of the brief exempted by Rule 32(f).

This brief complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6). It has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

This brief complies with the electronic-filing requirements of Local Rule 28A(h)(2) because it was scanned for viruses using Windows Defender and no virus was detected.

January 9, 2024                                    /s/ Stephen J. Obermeier
                                                   Stephen J. Obermeier

## CERTIFICATE OF SERVICE

I certify that on January 9, 2024, I electronically filed the foregoing brief with the Clerk of the Court by using the CM/ECF system, and that the CM/ECF system will accomplish service on all parties represented by counsel who are registered CM/ECF users.

January 9, 2024

/s/ Stephen J. Obermeier
Stephen J. Obermeier